No. 47,447

STATE OF KANSAS, *Appellee,* v. ALEXANDER BRADLEY, a/k/a WAY-
LAND E. CARPENTER, *Appellant.*

(527 P. 2d 988)

Opinion filed November 2, 1974.

*Frederick L. Haag,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita,
argued the cause, and was on the brief for the appellant.

*Clifford L. Bertholf,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of Wichita, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant appeals from a conviction on two counts of aggravated assault of a law enforcement officer (K. S. A. 1973 Supp. 21-3411), and from sentences of imprisonment for a period of not less than ten years nor more than forty years on each count. The court ordered the sentences to be served consecutively.

The primary question on appeal is whether a detective in the police department, wearing civilian clothes, was a properly identified law enforcement officer under K. S. A. 1973 Supp. 21-3411. The second question presented is whether the trial court abused its discretion in sentencing Bradley to consecutive sentences.

Shortly after noon on April 7, 1972, Vernon L. Weaver, a commercial artist and student at Wichita State University, was standing at the corner of Third and Ohio Streets in Wichita taking photographs he intended to use in an art class. Alexander Bradley a/k/a Wayland E. Carpenter (defendant-appellant) was parked in a black station wagon at that corner. Bradley motioned that he wanted Weaver to come to his car. When Weaver did so, Bradley asked him what he was doing. Weaver stated that he was taking photographs. Bradley lifted a pistol from the car seat and pointed it at Weaver again asking what Weaver was doing. Weaver repeated what he had said previously and then started running toward his car. Before reaching his car, Weaver stopped, turned around, and attempted to observe the number on Bradley's license plate. However, Bradley had turned around in his car and was pointing the pistol at Weaver through the rear window of his car, so Weaver immediately ran to his car, and started to drive away. Weaver decided to make another attempt to observe Bradley's license plate number. He followed Bradley and eventually succeeded in obtaining his license plate number. Weaver then stopped at a car dealership and explained what had occurred to an off-duty policeman who was there. The policeman called the police dispatcher and related this information including Bradley's license plate number.

In the meantime Bradley had driven into the downtown area of Wichita. There he encountered Ike Neufeld, who was driving his automobile near the Century II civic center. Bradley drove his

automobile next to Neufeld's, honked at him, and forced Neufeld to the curb at gunpoint. Neufeld rolled down his window to see what Bradley wanted. Bradley, still pointing his gun at Neufeld, said he wanted to talk with someone about his problems. Neufeld offered Bradley his business card and suggested that he call him later on the telephone. Bradley said he would accept the card. Neufeld then left his automobile, walked to Bradley's automobile, and handed his card to Bradley through the passenger window. Bradley was still pointing his gun at Neufeld. At that time the two men engaged in a short conversation about Bradley's problems.

While Bradley and Neufeld were talking, Officer Robert S. Benham of the Wichita Police Department approached the scene in his patrol car in response to a radio transmission regarding a man in a black station wagon waving a gun at people. Officer Benham stopped his patrol car approximately fifteen feet in front of Bradley's automobile. Officer Benham was wearing a police uniform and badge, and his patrol car had a visibar across the top, which consisted of two large red lights with a white sign between them saying "Wichita Police". Officer Benham exited his patrol car and called to Bradley to drop his gun. As Officer Benham started to approach Bradley's car, Bradley turned his gun from Neufeld, pointed it at Officer Benham and fired one shot. Officer Benham then crouched behind the open door of his patrol car and again called to Bradley to drop his gun. When he concluded that Bradley was going to keep the gun, Officer Benham retreated to the rear of the patrol car and radioed for assistance. Bradley again pointed his gun at Neufeld and then he assumed conversation.

Within a few minutes Detective Sergeant Merle J. Nelson of the Wichita Police Department arrived on the scene. He had come from the police station a few blocks distant in response to Officer Benham's call. Detective Nelson was not dressed in police uniform, but was wearing a sport jacket blazer and a pair of blue and white slacks. At this time Bradley was yelling that he wanted to talk to the Governor. Nelson shouted back that the Governor was not in the city and asked if Bradley would talk with him. At this time, according to Detective Nelson's testimony, Officer Benham hollered at Bradley telling him "that that is Detective Nelson, would you talk to him." Bradley looked at Detective Nelson, then back at Officer Benham, and replied, "Yes, I will talk to him. Come on over to the car." Detective Nelson went to the automobile and talked with Bradley for some time. Bradley told Nelson that he

could not get anyone's attention unless he had a gun in his hand and all he wanted to do was to be able to talk with someone. About this time Officer Benham started to move closer to Bradley's vehicle. All of a sudden Bradley pointed the gun back out the window in Benham's direction and told Nelson, "You tell that son of a bitch to get back cause I could have killed him long ago." Nelson yelled at Officer Benham to back away. Bradley then pointed the gun back at Nelson and cocked the hammer, and said, "You know I could kill you now, too." Eventually, Bradley surrendered the pistol to Detective Nelson and was taken into custody.

Neufeld, Benham and Nelson testified that Bradley acted confused and incoherent, and was loud and excited.

Bradley was charged and found guilty of aggravated assault on Officer Benham (Count One) and Detective Nelson (Count Two). Bradley was acquitted of two other counts not material to this appeal. Thereafter, the state moved the court to impose sentence under K. S. A. 1973 Supp. 21-4504. The state established that Bradley previously had been convicted of a felony in the State of Oklahoma.

Aggravated assault on a law enforcement officer is defined and proscribed by K. S. A. 1973 Supp. 21-3411 as follows:

"Aggravated assault of a law enforcement officer is an aggravated assault, as defined in section 21-3410, committed against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of his duty.

"Aggravated assault of a law enforcement officer is a class C felony."

The appellant contends the evidence at the trial was insufficient, as a matter of law, to establish that Detective Nelson was a "properly identified" law enforcement officer within the meaning of 21-3411.

This court has not heretofore considered the meaning of the statutory phrase "properly identified".

The appellant urges that proper identification requires evidence: (1) That Detective Nelson *personally identified himself* as a law enforcement officer to the defendant, and (2) that the defendant *knew* Detective Nelson was a law enforcement officer.

The appellant cites three cases for his position: *Pettibone v. United States*, 148 U. S. 197, 37 L. Ed. 419, 13 S. Ct. 542 (1892); *United States v. Bell*, 219 F. Supp. 260 (E. D. N. Y. 1963); and *United States v. Forrest*, 300 F. Supp. 1011 (E. D. Wis. 1969).

*Pettibone* held that under an applicable federal statute it was necessary,

". . . [F]or the accused to have knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing, or impeding, or endeavoring to obstruct or impede the same." (p. 205.)

*Bell* and *Forrest* both held the defendants must know that the person assaulted was a federal officer before the defendant can be guilty of assaulting a federal officer in violation of 18 U. S. C. § 111. (Our research discloses that the federal courts are not in accord as to whether *scienter* is required under 18 U. S. C. § 111. See, Anno. 10 A. L. R. 3rd 833.)

We have examined *Pettibone, Bell* and *Forrest*. They are not controlling authority in the case at bar. Not only are the facts of those cases inapposite, but the statutes under which they were decided differ substantially from 21-3411.

For the reasons hereafter stated we are of the opinion the statutory element "properly identified" only requires evidence that the law enforcement officer be identified in such a manner that the defendant reasonably should know he is a law enforcement officer. This view is supported by the language of the statute and by K. S. A. 1973 Supp. 21-3416 which is *in para materia* with 21-3411.

First, the language of section 21-3411 does not protect all law enforcement officers; it does not protect officers who are neither uniformed nor properly identified. The statute protects only two classes of officers in the performance of their duties: Uniformed officers and properly identified officers. Since there is no indication in the statute that the legislature intended to provide different standards of protection for these two classes of officers, the general principle of identification envisioned by the legislature and embodied in the disjunctive phrase "uniformed or properly identified" must be the same for both classes. This general principle is readily discernible from one aspect of the phrase, namely, "uniformed". A person *reasonably should know* that one wearing the uniform of a law enforcement officer is such an officer. Applying this general principle of identification to the second aspect of the phrase, it must be concluded that a nonuniformed officer is "properly identified" when he is identified in such a manner that a person *reasonably should know* the officer is a law enforcement officer.

The appellant does not offer any authority or basis for his assertion that under 22-3411 the officer-victim must personally identify himself as a law enforcement officer to the defendant. Clearly, the statute does not contain such a limitation. It merely requires that

the officer-victim be properly identified without designating the method.

The appellant does not contend that the statute requires him to know Officer Benham was a law enforcement officer. Benham was the uniformed police officer the appellant was convicted of assaulting in Count One. The appellant does not challenge the sufficiency of the evidence to support his conviction on Count One. No reason is suggested that the legislature intended to provide different standards of protection for the two classes of officers covered by the statute.

Secondly, the foregoing interpretation is supported by K. S. A. 1973 Supp. 21-3416, which is in pari materia with 21-3411. Section 21-3416 defines and proscribes unlawful interference with a fireman or fire fighter.

"Unlawful interference with a fireman or fire fighter is knowingly and intentionally interfering with, molesting or assaulting, as defined in section 21-3408, any fireman or fire fighter while engaged in the performance of his duties, or knowingly and intentionally obstructing, interfering with or impeding the efforts of any fireman or fire fighter to reach the location of a fire."

Section 21-3411 and 21-3416 relate to public employees performing dangerous and vital duties; both statutes have a common purpose, protection of that class of persons. Having these characteristics, the statutes are in pari materia and they must be read together when interpreting section 21-3411. (Gnadt v. Durr, 208 Kan. 783, 494 P. 2d 1219; Flowers, Administratrix v. Marshall, Administrator, 208 Kan. 900, 494 P. 2d 1184; Sutherland, Statutory Construction § 51.01 [4th ed. 1973]; 82 C. J. S. Statutes § 366.) Since the statutes were enacted at the same session of the legislature and have the same effective date, (Laws 1969, ch. 180, §§ 21-3411, 21-3416) the rule of in pari materia "applies with peculiar force." (82 C. J. S. Statutes § 367.)

In section 21-3416 the legislature expressly included scienter as an element of the offense. Therefore, it may be concluded the term "knowingly" would have been used in section 21-3411, if the legislature had intended that scienter also be an element of aggravated assault on a law enforcement officer. Its absence is compelling evidence that the legislature did not intend to require scienter.

After examining the record on appeal in the light of what has been said, we find there was substantial competent evidence from which the jury reasonably could have found that Detective Nelson was a "properly identified" law enforcement officer when he was assaulted with a deadly weapon by the appellant. Detective Nel-

son was identified in such a way that the appellant reasonably should have known Nelson was a law enforcement officer. The evidence discloses that Nelson was identified as Detective Nelson to the appellant by Officer Benham, and the appellant recognized Detective Nelson as the person identified by Officer Benham and agreed to talk with him. Since Officer Benham was in a plainly marked police car and was wearing a police uniform, badge and other equipment, his identification of Detective Nelson for the appellant was sufficient for the jury to find that Detective Nelson was "properly identified".

The appellant next contends that since his acts of assault on Officer Benham and Detective Nelson "occurred at the same time and were part of the same acts or occurrences . . . it was an abuse of discretion for the trial court to impose the Habitual Criminal Act and also to order the sentences imposed for each violation to run consecutively."

While the appellant's various assaults with his pistol upon Officer Benham and Detective Nelson occurred during one episode, they nevertheless constituted separated offenses of aggravated assault on each of the law enforcement officers. This is not a situation where a single transaction may constitute two separate and distinct offenses. (See, *Coverly v. State*, 208 Kan. 670, 493 P. 2d 261.)

Under K. S. A. 1973 Supp. 21-4501 (*c*), the trial court was authorized to sentence the appellant to imprisonment for a minimum of one to five years and a maximum of twenty years. K. S. A. 1973 Supp. 21-4504 permitted the trial court to double the authorized sentence under 21-4501 (*c*), since the appellant previously had been convicted of a felony. This court will not disturb a sentence imposed by a trial court on the ground it is excessive provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression or corrupt motive. (*Miller v. Hudspeth*, 164 Kan. 688, 192 P. 2d 147 and *State v. Bradley*, 130 Kan. 759, 288 Pac. 735.) The order for consecutive service of the two terms was authorized by K. S. A. 1973 Supp. 21-4608 (1).

"When separate sentence of imprisonment for different crimes are imposed on a defendant on the same date, including sentences for crimes for which suspended sentences or probation have been revoked, such sentences shall run concurrently or consecutively as the court directs. . . ."

From the record presented the basis of the appellant's attack upon his sentence lacks merit.

The judgment of the lower court is affirmed.