No. 55,146

STATE OF KANSAS, *Appellee,* v. HENRY D. PONDEXTER, *Appellant.*

(671 P.2d 539)

Opinion filed October 21, 1983.

*Richard L. Hilton,* of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a criminal action in which Henry D. Pondexter (defendant-appellant) appeals a jury verdict finding him guilty of aggravated assault of a law enforcement officer

(K.S.A. 21-3411), unlawful possession of a firearm (K.S.A. 21-4204), burglary (K.S.A. 21-3715) and attempted murder (K.S.A. 21-3301, 21-3401). The appellant contends the evidence was insufficient to support the verdict on each count and the trial court erred in consolidating the charges for trial.

On October 22, 1981, two Wichita undercover police officers, Randy Mullikin and Richard Mouser, while patrolling in an unmarked car, observed the appellant and another man riding in a car exchanging what appeared to be a marijuana cigarette. The other car was driven by the appellant. At a stoplight the officers asked the two men if they knew where they could buy some marijuana. The men indicated the officers should follow them to a nearby parking lot. There the passenger in the car, Terry Ross, informed the officers he knew where he could purchase some marijuana for them and told the officers to follow him to another location. At the second location Ross approached the officers' vehicle and asked for ten dollars with which to purchase the marijuana. The officers suggested the appellant sit in their car until Ross returned. The appellant sat in the front seat of the car with Officer Mullikin, while Officer Mouser sat in the back seat behind the appellant.

Ross went into an apartment across the street from where the vehicles were parked. After several minutes elapsed the appellant suggested they honk the horn. Ross still did not appear. The appellant then suggested one of the officers go to the apartment to find out where Ross was. At this time Mouser signaled to Mullikin that they should arrest the appellant. Mouser asked the appellant to lean forward so he could push the seat forward and get out of the car. The officers both testified Mouser got out of the vehicle, showed the appellant his handcuffs, advised him they were Wichita police officers and that he was under arrest. The appellant was told to place both hands on the dashboard so he could be handcuffed, removed from the vehicle and searched for weapons. The appellant placed his left hand on the dashboard but kept his right hand near his waist. Officer Mouser grabbed the appellant's right wrist and placed his hand on the dashboard, again advising the appellant they were police officers. Officer Mullikin testified that he also advised the appellant they were police officers. At this time the appellant made a sudden gesture with his right hand toward his waist and lunged his shoulder into Officer Mouser. Mullikin warned Mouser the

appellant had pulled a gun. Mouser pulled the appellant from the car and subdued him after a struggle on the ground. At this time Ross came out of the apartment and asked what was going on. The appellant told him, "They're cops." Ross went back into the apartment and reemerged carrying the ten dollars. He was then placed under arrest.

The appellant was charged with aggravated assault on a law enforcement officer and unlawful possession of a firearm. These charges were originally filed as misdemeanors in the municipal court but were later dismissed and refiled as felonies in the district court. The appellant failed to appear when his case was called for trial on March 22, 1982, having apparently fled from the courthouse after a hearing earlier that day on a motion to continue. The trial court ordered forfeiture of the appearance bond and issued a warrant for the appellant's arrest.

On April 2, 1982, Officer Mullikin returned to his home from work around 1:30 a.m. While reaching to close a door to his garage which he noticed had been left partially open, someone from inside the garage shot at Officer Mullikin's face, causing powder burns to his face and left eye. Another shot was fired as Mullikin ran from the garage and around to the front of the house. He heard what sounded like someone climbing over his neighbor's fence and then saw a man running down the street. The man fired at Mullikin three more times when Mullikin ordered him to stop. Mullikin returned three shots from his service revolver. Officer Mullikin described his assailant as a black male, 5'7" to 5'9" in height and weighing 160 to 170 pounds, with an afro-style hair cut. While in pursuit of the man Mullikin heard a car door slam and an engine start up. He then saw a vehicle with two round red tail lights on each side pull away from the curb and turn the corner. The engine was loud and sounded as if the muffler was worn out. Mullikin could not tell what type of vehicle it was. Two people living in the area near Officer Mullikin testified they saw a dark-colored flatbed truck with a loud engine traveling in the area at a high rate of speed shortly after the shots were heard. The next day bullet fragments from .22- and .38-caliber weapons were recovered from the area.

A reward was offered by Crimestoppers in Wichita for information concerning the attempted shooting of Officer Mullikin. A few days later Terry Ross contacted Crimestoppers and gave a

statement implicating the appellant. He testified he had several conversations with the appellant about killing Officers Mullikin and Mouser to prevent them from testifying at trial on the pending charges. Ross testified the appellant offered to pay him $2500 for helping to kill the officers. During this time Ross saw the appellant in possession of several guns, including a .22-caliber revolver and other handguns.

A week or two prior to the March trial date the appellant picked Ross up in his truck and showed him where Mullikin's house was. They had guns with them and discussed what strategy to use to kill Mullikin. They tired of waiting for Mullikin to return home, however, and abandoned their mission. A few days later the appellant asked to borrow a ski mask from Ross and said he was going back to Mullikin's house. Sometime later Ross learned of the attempted shooting of Officer Mullikin through the news media.

It was established that the appellant owned a 1959 flatbed truck which was being kept on his uncle's property in order to be repaired at the time the attempt was made to shoot Officer Mullikin. The appellant's uncle testified he had the only key to the truck and to the best of his knowledge the truck was parked at his house the night in question. He further testified the truck was operable but could not be driven far without overheating. This was the truck driven by the appellant the night he and Ross unsuccessfully waited for Officer Mullikin to return home in order to kill him. Ross testified the truck could be driven although there was a small hole in the radiator.

The appellant was subsequently arrested and charged with attempted murder and burglary. This case was consolidated for trial with the action pending against the appellant for the charges arising out of his arrest in October. Ross received a $2500 reward from Crimestoppers for his information and was granted immunity from prosecution for his involvement in the crimes in exchange for his testimony against the appellant.

The appellant first challenges the sufficiency of the evidence to support his conviction of each offense. It is well established in this state that in a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the

appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? Also, in considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction must stand. See *State v. Peoples*, 227 Kan. 127, 133, 605 P.2d 135 (1980). See also *State v. Williams*, 229 Kan. 290, 296, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981).

The appellant contends the evidence was insufficient as a matter of law to support the conviction of aggravated assault on a law enforcement officer because neither of the officers was properly identified as a police officer at the time of the appellant's arrest on October 22, 1981. K.S.A. 21-3411 defines the offense of aggravated assault on a law enforcement officer as follows:

"Aggravated assault of a law enforcement officer is an aggravated assault, as defined in section 21-3410, committed against a *uniformed or properly identified* state, county or city law enforcement officer while such officer is engaged in the performance of his duty." (Emphasis added.)

It is an established fact that the officers were not uniformed. It is also clear the appellant was not shown an identification card or badge until possibly after he was subdued and handcuffed. The issue is whether the officers, wearing civilian clothing while engaged in undercover work, were "properly identified" law enforcement officers at the time of the assault, as provided by K.S.A. 21-3411.

The meaning of the phrase "properly identified" as it is used in K.S.A. 21-3411 was discussed at length in *State v. Bradley*, 215 Kan. 642, 527 P.2d 988 (1974). There it was held the statutory element "properly identified" only requires evidence that a law enforcement officer be identified in such a manner that the defendant reasonably should know the person is a law enforcement officer. 215 Kan. at 646. In *Bradley*, the court found there was sufficient evidence to support a conviction for aggravated assault on a law enforcement officer where a police detective, dressed in civilian clothing, was threatened by the defendant with a gun after a uniformed police officer in a plainly marked police car had informed the defendant of the detective's identity.

The appellant testified at trial that neither of the two officers

identified themselves as police officers at any time and that he did not realize they were police officers until he was handcuffed. He testified that when Mouser got out of the car and ordered him to put his hands on the dashboard he thought the two men were going to rob him so he tried to run away. He denied pulling a gun on the officers and instead testified it fell out of his clothes after he was arrested. In rebuttal a Wichita police detective testified the appellant stated during an interview following his arrest that he drew his gun when the two men informed him they were police officers. The appellant denied making the statements to the detective.

The evidence presented by the State was sufficient, as a matter of law, for the jury to find Officers Mouser and Mullikin were identified in such a way that the appellant reasonably should have known they were law enforcement officers. Officer Mouser testified he showed the appellant his handcuffs, advised him they were police officers and that he was under arrest. When the appellant failed to comply with the officer's orders both Mouser and Mullikin reaffirmed to him they were police officers. Following his arrest the appellant advised the detective he knew the men were police officers at the time he drew his gun. There is substantial competent evidence in the record from which it can be concluded Officers Mouser and Mullikin were "properly identified" law enforcement officers when they were assaulted by the appellant with a deadly weapon.

The appellant next contends the evidence was insufficient to support the conviction for unlawful possession of a firearm. The appellant testified he took the gun from Terry Ross before going to sit in the officers' vehicle because he was afraid of what Ross would do to the officers with the gun. He intended to leave the gun in his car but Ross told him he would take the gun himself if the appellant did not take it with him. The appellant contends he did not intend to use the weapon on the officers and that "the innocent handling of the weapon to protect himself is reasonable and not contemplated by statute."

This court has repeatedly stated that the possession of a firearm prohibited by K.S.A. 21-4204 is not the innocent handling of the weapon, but a willful or knowing possession of a firearm with the intent to control the use and management thereof. See, *e.g., State v. Jones,* 229 Kan. 618, 620, 629 P.2d 181

(1981); *State v. Neal*, 215 Kan. 737, 740, 529 P.2d 114 (1974). In *Jones* this court rejected the defendant's argument that the use of a firearm in self-defense constituted a defense for an otherwise unlawful possession of a firearm, stating:

"We are convinced that the possession and use of a firearm to defend oneself against an aggressor's imminent use of unlawful force is not in itself a defense to the charge of unlawful possession of a firearm under K.S.A. 21-4204. It is the possession of the firearm which is prohibited by the statute. It is the nature and degree of the possession which may furnish a defense to the charge. Where the possession of the firearm is brief and without predesign or prior possession such possession is not prohibited by the statute, for in such use the possessor of the firearm lacks the required intent to control, and the possession is not purposeful and intentional. So it is not how the firearm is used (in self-defense) that may furnish a defense, it is the nature and degree of the possession which may do so." 229 Kan. at 620-21.

This court has held the evidence was sufficient to show the defendant was in possession and control of a firearm within the meaning of the statute where the defendant hid a gun in the pocket of his coat in an attempt to steal it from a store (*State v. Knowles*, 209 Kan. 676, 678, 498 P.2d 40 [1972]); where the defendant kept a gun in a dresser in a locked bedroom (*State v. Porter*, 201 Kan. 778, 781, 443 P.2d 360 [1968], *cert. denied* 393 U.S. 1108 [1969]); and where the defendant took a gun from a bedside table in her bedroom and fired it into the floor to frighten an unwanted guest (*State v. Phinis*, 199 Kan. 472, 482, 430 P.2d 251 [1967]).

The evidence in the record on appeal was sufficient to establish the appellant's possession and control of the gun in violation of the statute. When construed in the light most favorable to the prosecution the evidence heretofore set forth shows the appellant concealed the gun in his clothing before he went to sit in the officers' vehicle, and that he *drew the gun on the officers* in an attempt to flee when they identified themselves to him. These facts and circumstances were sufficient to permit the jury to find the appellant's possession was more than a mere "innocent handling" of the weapon; rather, he possessed the gun with the intent to control its use and management. The appellant's claim that he used the gun to protect himself from being robbed by two unidentified men does not negate or lessen the nature and degree of the possession.

The appellant next contends the evidence was insufficient to

sustain the convictions for attempted murder and burglary. Specifically the appellant alleges the uncorroborated testimony of Terry Ross that the appellant had expressed a desire to kill Officer Mullikin was not sufficient to support the verdict of attempted murder, particularly in light of the fact Ross received a $2500 reward for the information and was granted immunity by the State to testify. He also argues there was no evidence presented to show he entered Officer Mullikin's garage to support the charge of burglary. At trial the appellant's mother, his brother and a friend of the family testified the appellant was at home watching television from 8:30 p.m. on April 1, 1982, until 2:00 a.m. on April 2.

It is a well-established principle of law that it is the prerogative of the jury to determine the credibility of the witnesses, the weight to be given the evidence, and the reasonable inferences which may be drawn from the evidence. *State v. Fenton,* 228 Kan. 658, 666, 620 P.2d 813 (1980). Furthermore, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 14, 587 P.2d 1259 (1978).

Bearing these principles in mind, the evidence presented by the State, while mostly circumstantial, was sufficient to permit the jury to infer that the appellant was guilty of the crimes charged. The evidence supporting the State's theory of the case established the appellant wanted to kill Officer Mullikin to prevent him from testifying concerning the charges arising out of his arrest on October 22, 1981; that he offered Terry Ross $2500 to help him kill the two officers; that on a prior occasion he and Ross unsuccessfully waited for Mullikin at his home intending to kill him; that the appellant told Ross he was going to go to Mullikin's house again; and that Ross saw the appellant in possession of a handgun compatible with the one which was fired at Mullikin. In addition, the appellant owned a flatbed truck similar to that seen by area residents leaving the scene shortly after the exchange of gunfire was heard. This truck was used by the appellant and Ross on their previous attempt to kill Mullikin. The fact Terry Ross received a reward and was granted immunity for his testimony does not affect the sufficiency of his testimony, but rather were factors for the jury to consider in determining his credibility and the weight to be given his

testimony. Much of the evidence concerning the truck was discovered after Ross gave information to Crimestoppers, thus corroborating Ross' testimony. Regarding the burglary charge, the evidence is undisputed that the perpetrator of the shooting was inside Mullikin's garage when the first shot was fired. Admittedly no one could positively identify the appellant as the person who tried to kill Officer Mullikin. However, there was substantial competent evidence to justify the inference drawn by the jury that the appellant was guilty of the offenses charged.

As his final point on appeal the appellant contends the trial court erred in consolidating the charges arising out of the two separate incidents for trial. K.S.A. 22-3203 permits consolidation of two or more complaints or informations against a single defendant if the crimes could have been charged in a single complaint or information as provided by K.S.A. 22-3202(1). That statute provides joinder in the same complaint or information is proper if the crimes charged: (1) are of the same or similar character, (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *State v. Bagby,* 231 Kan. 176, 177-78, 642 P.2d 993 (1982). The decision to consolidate rests within the sound discretion of the trial court and its holding will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Bagby,* 231 Kan. at 178, and cases cited therein. The appellant contends none of the requirements for consolidation are present in this case because the two sets of charges were dissimilar and completely unrelated to each other.

In *State v. Moore,* 226 Kan. 747, Syl. ¶ 1, 602 P.2d 1359 (1979), it was held that under K.S.A. 22-3202 and 22-3203, when criminal conduct resulting in a second charge is precipitated by a previous charge, the two are sufficiently "connected together" to allow consolidation for trial. In that case the defendant was charged with corruptly influencing a witness and unlawful deprivation of property when he attempted to persuade his roommate to falsely testify during his trial on charges of aggravated robbery and kidnapping which arose out of an earlier unrelated incident. This court held the charges were properly consolidated for trial, stating:

"The federal cases consistently hold that when criminal conduct resulting in a

second charge is precipitated by a previous charge, the two are considered sufficiently 'connected together' to allow consolidation for trial. For example, 'a charge of bail jumping or escape may be deemed sufficiently "connected" with a substantive offense to permit a single trial, at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges.' *United States v. Ritch,* 583 F.2d 1179, 1181 (1st Cir.), *cert. denied* 439 U.S. 970 (1978). . . . In *Williams v. United States,* 265 F.2d 214 (9th Cir. 1959), it was held that a charge of obstruction of justice was properly joined for trial with a charge of statutory rape when the obstruction charge was the result of the defendant's persuasion of the victim in the statutory rape charge to repudiate her earlier statement of intercourse with defendant. Applying the reasoning of the federal cases to the factual circumstances in this case, we hold that the two criminal cases against the defendant Moore were properly consolidated for trial under the Kansas statutes. The crimes of aggravated robbery and kidnapping were 'connected together' with the charge of corruptly influencing a witness because the crime charged in 78 CR 629 precipitated the conduct charged in 78 CR 1659. When charges are 'connected together,' their joinder for trial rests in the sound discretion of the trial court, and such joinder is not reversible error absent abuse of discretion. *State v. McGee,* 224 Kan. 173, 175, 578 P.2d 269 (1978)." 226 Kan. at 749-50.

The case at bar is factually similar to the situation in *Moore.* Here the evidence presented by the State indicates the appellant wanted to kill Mullikin to prevent him from testifying at his trial for unlawful possession of a firearm and aggravated assault on a law enforcement officer. Clearly the crimes charged in the earlier action precipitated the conduct resulting in the attemped murder and burglary charges. The charges arising out of the two incidents were properly consolidated for trial.

The judgment of the lower court is affirmed.