(739 P.2d 1)

No. 59,584

IN THE MATTER OF THE ADOPTION OF BABY GIRL H.
L.H., *Appellant,* DARROL LYNN and DEBORAH LYNN THOMPSON,
*Appellees.*

—

Opinion filed June 18, 1987.

*Caleb Boone,* of Law Offices of Thomas C. Boone, of Hays, for the appellant.

*Gene F. Anderson,* of Kent, Wichman & Anderson, of Hays, for the appellees.

Before ABBOTT, C.J., REES and DAVIS, JJ.

ABBOTT, C.J.: L.H., the natural mother of Baby Girl H, appeals

from the trial court's order decreeing the adoption of Baby Girl H by Darrol and Deborah Thompson.

L.H. discussed with her doctor the possibility of placing her unborn child for adoption. The doctor stated he knew of a couple wishing to adopt a child, and suggested she meet with his attorney, Thomas Toepfer. She met with Toepfer, and claims he advised her of her "legal rights," and arranged for the Thompsons to adopt the unborn child.

L.H. alleges she was placed on a drug to induce labor and delivered Baby Girl H at *11:52 a.m.* on April 1, 1986. She also alleges that Thomas L. Toepfer and Judge Tom Scott appeared in her room during the hospital's lunch hour, shortly after the birth of the child, and obtained her consent to the Thompsons adopting Baby Girl H.

The Thompsons commenced adoption proceedings, and L.H. then attempted to set the consent aside. The trial judge granted summary judgment, holding the consent was irrevocable under K.S.A. 1986 Supp. 59-2102(c), dismissed L.H.'s answer, and granted a decree of adoption to Thompsons.

L.H. contends that because she was under the effects of medication and pain associated with the birth, she did not freely and voluntarily consent to the adoption. She also contends a conflict of interest existed since Toepfer represented her, her doctor, and the Thompsons, thus voiding her consent. She also argues the consent portion of 59-2102(c) is unconstitutional for a number of reasons that will be more fully set out when we discuss those issues later in this opinion.

L.H. first contends the trial court erred in granting summary judgment because Thomas Toepfer's conduct as an attorney was unethical, and that this vitiated her consent. This argument is premised on the assumption that she can attempt to revoke her consent on some basis other than a void consent. Obviously, it is possible to have a void consent that is acknowledged before a judge of a court of record. Would anyone doubt that a consent obtained at gunpoint by a judge of a court of record would be held void and of no effect? If so, then a consent obtained by fraud and duress should also be void. The issue L.H. raises on this point, however, is limited to whether she can attempt to revoke the consent because of the alleged conduct of Toepfer.

In the appeal of *In re Adoption of Irons*, 235 Kan. 540, 549, 684 P.2d 332 (1984), the Supreme Court stated:

"In adoption cases, such as this, the attorney can represent both the natural and adoptive parents. The attorney owes both sets of parents a duty to provide good faith advice concerning the legal consequences of their acts. This multiple representation can continue so long as no conflict develops between the parties. However, if a conflict occurs, the attorney must choose which conflicting interest he or she will represent. The best way to apprise the parties of the choice is by use of a frank discussion before representation commences, as was done by Ms. Klarfeld [attorney]. Since Lori Klarfeld's relationship with Anjanette Irons [natural mother] was confidential, she owed Anjanette the duty of complete legal advice concerning the nature and consequences of adoption."

In this case, the record does not indicate, nor does L.H.'s answer allege, that Toepfer did not inform her that he represented the adoptive parents or that he failed to provide legal advice to her. In fact, her answer states that Toepfer "advised her of her legal rights relative to the proceedings." Toepfer initially represented both parties. However, he did not represent L.H. after the consent was signed and withdrew as attorney for the adoptive parents four days after L.H. filed her answer. Thus, in compliance with *Irons*, Toepfer did not represent either party after the conflict became apparent. The record does not demonstrate any conduct by Toepfer that could vitiate L.H.'s consent.

L.H. next argues that the consent is revocable because neither the judge who acknowledged the consent nor the consent form itself sufficiently explained to her the consequences of her consenting to the adoption.

Kansas statutes regarding adoption do not expressly indicate what should be contained in a consent form, nor do they indicate whether the judge should examine the consenting parent in order to insure that the parent understands the effect of the consent. L.H. presumes that the acknowledging judge made no effort to determine whether the consent was freely and voluntarily given. However, a record was not made when the consent was obtained. Nothing in the record on appeal indicates what transpired. L.H. has the burden of showing error. It was noted in *In re Adoption of Chance*, 4 Kan. App. 2d 576, 583, 609 P.2d 232, *rev. denied* 228 Kan. 806 (1980), that "[t]o be free and voluntary, a consent must be to all the legal consequences of the adoption

with an understanding of the meaning and effect thereof. [Citations omitted.]" L.H. has failed to show error on this point.

We have examined the consent to adoption and compared it to the consent to adoption approved by the trial court in *Trent* and see no significant difference in the two. It is, however, significant that in *Trent* the Supreme Court was reviewing the trial court's finding that the consent was freely and voluntarily given. The trial court had also considered oral evidence. Thus, the scope of review was entirely different from what we are faced with in the present case.

L.H. also contends that the legislative intent of K.S.A. 59-2102, as amended in 1968, be construed in pari materia with K.S.A. 38-127 and 38-128 to include the same requirements. They are as follows:

"The relinquishment provided by this act shall be signed and acknowledged before the court by the person or persons by whom it is executed and shall sufficiently identify the child or children so relinquished. It shall be the duty of the court, in all such cases of relinquishment so executed, to advise the parent or parents or other persons *in loco parentis* of such children of the consequences of the act of relinquishment." K.S.A. 38-127.

"In all cases where a parent or person *in loco parentis* has relinquished and surrendered his child to the department pursuant to this act, and the judge before whom the relinquishment was executed shall have stated on the relinquishment document that the parent or the person *in loco parentis* had been advised by him of his rights and that the act of the parent or person *in loco parentis* was voluntary, all the rights of the parent or person *in loco parentis* shall thereupon be terminated, including the right to receive notice in a subsequent adoption proceeding involving said child." K.S.A. 38-128.

The statutes govern the relinquishment of a child to the Department of Social and Rehabilitation Services. The two statutes were adopted during the same session. An article by then Sen. Robert Bennett states, in part:

"Two acts were passed in the last session of the legislature with reference to adoption. Under one [K.S.A. 38-127 and 38-128] a parent or parents or a person *in loco parentis* (an individual organization vested with the right to consent to adoption) may surrender a child to the state department of social welfare and if that department accepts the child in writing, the department thereupon stands *in loco parentis* to the child, and possesses all rights of a natural parent or a legal guardian, including the power to place the child for adoption and give consent thereto. The minority of the consenting parent does not invalidate relinquishment and surrender, which must be executed in writing and acknowledged before a court. It is made the duty of the court to advise the person executing the consent of all consequences of the act. In those cases where a relinquishment has

occurred and the judge states on the relinquishment document that the party executing the same has been advised of his rights, and the relinquishment was voluntary, all rights of the parent or person *in loco parentis* are terminated, including the right to receive notice of a subsequent adoption proceeding. One of the purposes of this act is to make the consent and relinquishment irrevocable.

"To the same effect, Senate Bill 45 was adopted. Under this act [K.S.A. 59-2102] the consent of the parent or parents of the child must be in writing and acknowledged, and if it is acknowledged before the judge of a court of record, it is final and may not thereafter be revoked. If the consent is acknowledged before some other person authorized by law to take acknowledgments, and if it is subsequently filed of record in the probate court, it becomes irrevocable unless the consenting party, prior to final decree of adoption, alleges and proves that the consent was not freely and voluntarily given." Bennett, *The 1968 Kansas Legislature—How Did It Affect the Lawyer's Practice?* 37 J.B.A.K. 159, 212 (1968).

The rules for considering statutes in pari materia are summarized in *Clark v. Murray*, 141 Kan. 533, 537, 41 P.2d 1042 (1935):

" 'Statutes *in pari materia* are those which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose, and although an act may incidentally refer to the same subject as another act, it is not *in pari materia* if its scope and aim are distinct and unconnected. It is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislation, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior and subsequent sessions, and even those which have expired or have been repealed.' [59 C.J., Statutes § 620, p. 1042.]

" 'Statutes *in pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each, as it will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express terms; nor will it be presumed that the legislature intended to leave on the statute books two contradictory enactments. But if there is an unreconcilable conflict, the latest enactment will control, or will be regarded as an exception to, or qualification of, the prior statute.' [59 C.J., Statutes § 621, p. 1051.]

" 'It has been held that, in the construction of a statute, contemporaneous

legislation, although not precisely *in pari materia,* may be referred to in order to ascertain the intent of the legislature in the use of particular terms.' [59 C.J., Statutes § 622, p. 1056.]"

In the case of *State v. Bradley,* 215 Kan. 642, 647, 527 P.2d 988 (1974), the court considered K.S.A. 21-3416 (unlawful interference with a fire fighter) in pari materia with K.S.A. 21-3411 (aggravated assault of a law enforcement officer):

"Section 21-3411 and 21-3416 relate to public employees performing dangerous and vital duties; both statutes have a common purpose, protection of that class of persons. Having these characteristics, the statutes are *in pari materia* and they must be read together when interpreting section 21-3411 [Citations omitted.] Since the statutes were enacted at the same session of the legislature and have the same effective date, [citations omitted] the rule of *in pari materia* 'applies with peculiar force.' (Citation omitted.]

"In section 21-3416 the legislature expressly included *scienter* as an element of the offense. Therefore, it may be concluded the term 'knowingly' would have been used in section 21-3411, if the legislature had intended that *scienter* also be an element of aggravated assault on a law enforcement officer. Its absence is compelling evidence that the legislature did not intend to require *scienter*."

In the case before us, as in *Bradley,* the two statutes have a similar purpose: governing procedures for relinquishment of a child for adoption. They were also enacted in the same session of the legislature. Thus, the fact that the legislature chose not to impose the same requirements in K.S.A. 59-2102 as those set out in 38-127 and 38-128 is compelling evidence of legislative intent. This does not mean, however, that the legislature did not intend that the consent to adoption be anything less than freely and voluntarily given.

L.H. contends the irrevocable consent "unconstitutionally removes from courts their inherent constitutionally created power to inquire into the truth by adducing evidence on material issues" or by precluding inquiry into the state of mind or intent of the consenting parent. However, the statute provides a consent is irrevocable only if acknowledged before a judge.

L.H. next argues the consent to adoption acknowledged before a judge of a court of record, pursuant to K.S.A. 1986 Supp. 59-2102, creates only a rebuttable presumption that the consent was freely and voluntarily given.

Prior to 1968, a consent to adoption given by the natural parent could be revoked at any time before the court took final action on

the adoption. *In re Thompson*, 178 Kan. 127, 135, 283 P.2d 493 (1955). This case was effectively overruled by the legislature in 1968, when it added the following language to 59-2102:

"Whenever consent of a parent or parents is necessary it shall be acknowledged and may be acknowledged before the judge of a court of record, and when such consent is acknowledged before such a judge it shall be final and may not thereafter be revoked by the person or persons giving the same. In all other cases the written consent shall be acknowledged before an officer authorized by law to take acknowledgments, and when such consent has been given in writing and has been filed of record in the district court, the same shall be irrevocable, unless the consenting party or parties, prior to final decree of adoption, allege and prove that such consent was not freely and voluntarily given. The burden of proof shall rest with the consenting party or parties. Minority of a parent shall not invalidate his or her consent." K.S.A. 59-2102 (Weeks).

In 1982, the legislature rewrote the above section as follows:

"(c) Consent in all cases shall be in writing and shall be acknowledged before the judge of a court of record or before an officer authorized by law to take acknowledgments. If consent is acknowledged before a judge of a court of record, the consent shall be irrevocable. If consent has been given in writing and has been filed of record in the district court, the consent may be revoked, but only if, prior to final decree of adoption, the consenting party alleges and proves that the consent was not freely and voluntarily given. The burden of proving that the consent was not freely and voluntarily given shall rest with the consenting party." K.S.A. 1986 Supp. 59-2102.

No legislative history could be located to explain the reason for the change in 1982. On its face, it appears to be cosmetic only, as no substantive change is apparent.

A statute is to be interpreted so as to give it the effect intended by the legislature. The purpose and intent of the legislature governs when the intent can be ascertained from the statute. Words in common usage should be given their natural and ordinary meaning in arriving at a proper construction of the statute. When a statute is susceptible of more than one construction, it must be construed to give expression to its intent and purpose, though such construction is not within the strict literal interpretation of the statute. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 634-35, 694 P.2d 462 (1985). Furthermore, the legislative intention should be determined from a general consideration of the entire act. To this end, it is the duty of the court, as far as practicable, to reconcile the different

provisions so as to make them consistent, harmonious, and sensible. *State v. Kitzman,* 240 Kan. 191, 727 P.2d 491 (1986).

The governing statute indicates that any acknowledgment before a judge of a court of record is irrevocable, and the consenting party cannot attempt to revoke his or her consent by attempting to prove the consent was not freely and voluntarily given. Generally, an acknowledgment only serves as prima facie proof that the written consent was freely and voluntarily given. *In re Adoption of Trent,* 229 Kan. 224, 228, 624 P.2d 433 (1981) (acknowledgment of consent by a notary public).

In the majority's view, K.S.A. 1986 Supp. 59-2102 shows a legislative intent that the judge determine that the consent to adoption be freely and voluntarily given. Thus, a judge acknowledging a consent must make such a determination. The judge is not precluded by 59-2102(c) from making an inquiry of the consenting parent in order to determine his or her state of mind, intent, or whether the parent freely and voluntarily wishes to give the child up for adoption. The legislature has simply assumed a judge of a court of record would insure that the consent to adoption be freely and voluntarily given. We are tempted to hold the legislature intended to require the consent to be given on the record but cannot, in good conscience, do so, although we recommend that procedure be followed.

The problem, as the majority sees it, is whether the consent is void or voidable under the unique facts of this case. The natural mother had (or at least has made no valid showing that she had not) been informed of the legal consequences of adoption prior to the birth. This state has wisely determined that the natural mother should have an opportunity to rethink her decision after the child is born and she has had an opportunity, if she desires, to see and hold the child.

In this case the record indicates the birth occurred at 11:52 a.m. The pleadings contend the consent was signed in the mother's hospital room "during the luncheon hour at St. Anthonys Hospital," and that she had "not fully recovered from the effects of medication and stress."

Since summary judgment was granted, L.H. was not given an opportunity to develop the record, and we are unable to tell whether St. Anthony's Hospital's lunch hour is the normal one of 12:00 to 1:00 p.m. If that is the case, the consent was signed

within a time span of eight minutes to one hour and eight minutes from the actual birth of the child. The majority has considered adopting a "bright line" rule, that a consent signed within one hour of birth is void as a matter of law. Perhaps it is better left to the legislature to adopt a specific waiting period, if one is to be provided. The legislature has seen fit to provide a waiting period before a release can be validly executed. K.S.A. 60-2801. Surely an 18-year-old unmarried mother's decision to give up a child for adoption deserves as much consideration.

The majority has no hesitancy in stating that a consent, acknowledged before a judge of a court of record in the delivery room seconds after the umbilical cord is cut, is void. What period is a decent and medically sound interval of time after birth before a mother can execute a valid consent to an adoption will obviously vary, depending upon the individual involved, the difficulty of the birth, and the medication given. This birth is the first child of an eighteen-year-old unmarried mother. We have some hesitancy in saying it is a medical issue, because we are sure all doctors have had the experience of a patient making sense and in apparent control of his/her mental processes, only to learn later that he/she has no recollection of the conversation, who was present, etc.

We hold that the natural mother must have the opportunity to prove that the consent is void or voidable because of her inability to understand and fully comprehend what she was doing when the consent was signed, due to medication and/or the stress and pain of having given birth to a child shortly before. The trial court should hear that issue and then make appropriate findings. Depending on what those findings are, the court must either deny the motion to set aside the consent, or set aside the adoption and consent and return the child to the natural mother.

Reversed and remanded with directions.

REES, J., dissenting: In this appeal from an order of adoption brought by the adoptee's natural mother (L.H.), the principal and dispositive issue raised is whether the trial court erroneously refused to entertain L.H.'s attempted attack upon the validity of her written consent acknowledged before an associate district judge, that is, a "judge of a court of record" (K.S.A. 1986 Supp.

59-2102[c]). The foundation of the attempted attack has been L.H.'s assertion that her consent to adoption as expressed in the written consent was not freely and voluntarily given. In essence, the trial court held that the written consent, executed by L.H. and acknowledged by her before a judge of a court of record, was not subject to impeachment on the ground that the expressed consent to adoption was not freely and voluntarily given. The majority chooses to reverse and remand for an evidentiary hearing. I dissent.

A description of the procedural context out of which this appeal arises is of some interest. The prospective adoptive parents (the Thompsons) filed a petition for adoption of L.H.'s minor child and with it they filed L.H.'s written consent. In response to the petition, L.H. filed a verified answer. In it, L.H. alleged in relevant part that

"[her written] consent is invalid and of no legal force or [effect] . . . .

"[D]uring the term of her pregnancy . . . in a conversation with David A. Grainger, M.D., . . . the subject of adoption was discussed with [Dr. Grainger] by [L.H.] . . . and [Dr. Grainger] was advised that [L.H.] desired to offer said child for adoption . . . . [L.H.] met with Thomas L. Toepfer and . . . he advised her of her legal rights relative to the proceedings and legality of consenting to the adoption of her natural child to a third person . . . .

"[A]t approximately 12:00 a.m., on April 1, 1986, [L.H.] was place[d] on a drug for the purpose of inducement of labor, the exact kind of drug being unknown to [L.H.], and that as a result thereof she delivered said child at 11:52 a.m., on the same day, at St. Anthonys Hospital. . . . [D]uring the luncheon hour at St. Anthonys Hospital, before she had fully recovered from the surgery, . . . Toepfer and the Honorable Tom Scott appeared in her room for the purpose of asking her to sign the consent for adoption . . . . [T]hat conduct in and of itself under the circumstances existing at said time and place . . . should be considered as a . . . factor for vacating the consent to adopt . . . executed by [L.H.] for the reason that she had not fully recovered from the effects of medication and stress."

Paragraph 9 of the petition recited that "[a]ttached hereto, marked Exhibit B and made a part hereof by reference, is a complete written genetic, medical and social history of the child." (See K.S.A. 1986 Supp. 59-2278a[a][1]). Within that exhibit this appears:

"INDICATE BELOW YOUR REASONS FOR MAKING A PLACEMENT PLAN FOR YOUR CHILD:

"I am only 18 years old and not ready for a child so, therefore I'm trying to do

the best thing that I know of. It's not that I don't want this baby, it's that I want the best for it."

L.H.'s response to paragraph 9 of the petition, as it appears in her answer, is this: "[L.H.] admits that Exhibit B in part is back[g]round information which she furnished to hospital staff relative to her family back[g]round." Her answer includes no denial of the content of the incorporated statements appearing in the exhibit.

Reacting to L.H.'s answer, the Thompsons filed a "Motion for Summary Judgment" asking for "an order summarily dismissing the prayer of [L.H.] to revoke her consent to the adoption" for the reason that L.H.'s written consent, acknowledged before a judge of a court of record, is irrevocable by operation of K.S.A. 1986 Supp. 59-2102(c). (No one else having done so, I will not address the question whether it would have been better for the Thompsons to have presented their "Motion for Summary Judgment" as a motion under K.S.A. 60-212(f) for an order striking from L.H.'s answer its allegations, with reference to the purported invalidity and lack of legal force and effect of her written consent, on the ground those allegations constituted an insufficient defense.)

Twenty-one days after the Thompsons' motion was filed, it was heard by the district court without objection. The court had before it only the pleadings and briefs of the parties. There was no discovery record before it; there were no depositions, no answers to interrogatories, no responses to admissions requests, no affidavits, and no statements of uncontroverted contentions of fact as called for by Rule 141, 235 Kan. cx. After hearing argument by counsel, the district court orally found and ruled:

"[T]he legislature has spoken . . . and they have apparently decided that if consent to adoptions are acknowledged before a Judge of a Court of Record, that vitiates any pressure that might have been put on the mother. . . .

". . . I cannot find [K.S.A. 59-2102(c)] unconstitutional and I cannot judge Judge Scott's conduct.

"I therefore find that the consent is irrevocable, and the Motion for Summary Judgment is granted."

The journal entry memorializing the district court's ruling recites that

"the court finds that the consent to adoption signed by [L.H.] on April 1, 1986[,]

at St. Anthony Hospital of Hays, Kansas, in front of Associate District Judge Tom Scott is irrevocable under [K.S.A. 1986 Supp. 59-2102(c)] and hereby orders that the answer of [L.H.] filed to the petition in this matter be dismissed."

Some seventeen days later, the district court entered a Decree of Adoption, within which it is said:

"3. Both the natural mother and natural father executed 'Consent to Adoption' forms in the presence of Tom Scott, Associate District Judge.

"4. [L.H.] filed an action [*sic*] in this court in an attempt to revoke her consent, but this court . . . held that the consent was irrevocable.

"5. The consent of both [natural parents] is effective to permit the adoption of [the adoptee].

"6. No notice of this hearing was required because both natural parents have consented to the adoption . . . .

. . . .

"11. No valid cause is shown why the child should not be adopted by the petitioners."

Again, when the trial court rejected L.H.'s attempted attack by "dismissal" of her answer, there was *no* evidentiary matter before it other than that resulting from L.H.'s answering admissions to allegations in the Thompsons' petition.

Despite the majority's reference(s) to "void" and "voidable," as I see it the parties and the majority have drawn no operative distinction between revocation of consent and invalidity of consent because the consent was not freely and voluntarily given. I perceive there is a distinction, but I will not now pursue that subject. Instead, I join the parties and majority in approaching the present case as if the question at hand is whether a consent to adoption given in writing and acknowledged before a judge of a court of record may be revoked prior to final decree of adoption on the ground that it was not freely and voluntarily given.

The majority opinion states that L.H. argues that her written consent is revocable because neither the consent form nor the judge before whom it was acknowledged sufficiently explained to her its consequences. While this argument may appear, obliquely if not directly, in L.H.'s appellate brief, the record on appeal does not reveal that it was an argument presented to the trial court. Moreover, I do not see that argument within the allegations made by L.H. in her answer.

In discussing construction of statutes in pari materia, the majority refers to, and places some reliance upon, the 1968

publication of a comment by a then state senator. That comment affords no help. The statutory provisions with which we are concerned are those appearing in K.S.A. 1986 Supp. 59-2102(c); they are the product of 1982 legislative action. Furthermore, if the position is taken that in substance we are dealing with 1968 legislation, it remains that statements of legislators after enactment of legislation are not valid legislative history. *Hall v. State Farm Mut. Auto. Ins. Co.*, 8 Kan. App. 2d 475, 480, 661 P.2d 402, *rev. denied* 233 Kan. 1091 (1983). Be that as it may, I agree with the majority that the argument is unavailing to L.H. for the reason that there is no allegation by her that the judge failed to give her a proper and adequate explanation.

Once again, let us examine K.S.A. 1986 Supp. 59-2102 wherein there are set forth the statutory provisions that are the subject of this litigation. The pertinent text of the statute is as follows:

"(a) Before any minor child is adopted, consent to the adoption must be given by:

"(1) The living parents of the child;

. . . .

"(c) Consent in all cases shall be in writing and shall be acknowledged before the judge of a court of record or before an officer authorized by law to take acknowledgments. If consent is acknowledged before a judge of a court of record, the consent shall be irrevocable. If consent has been given in writing and has been filed of record in the district court, the consent may be revoked, but only if, prior to final decree of adoption, the consenting party alleges and proves that the consent was not freely and voluntarily given. The burden of proving that the consent was not freely and voluntarily given shall rest with the consenting party."

In *In re Adoption of J.G.*, 10 Kan. App. 2d 483, 484, 702 P.2d 1385, *rev. denied* 238 Kan. 877 (1985), we found "it *clear from the plain language* of [K.S.A. 1986 Supp. 59-2102(c)]" that filing of record in the district court is a prerequisite to the irrevocability of a freely and voluntarily given written consent acknowledged before "an officer authorized by law to take acknowledgments."

The majority posits possible worst-case scenarios, but nowhere in its opinion does it find K.S.A. 1986 Supp. 59-2102(c) to be ambiguous, that is, that there are two or more interpretations of the statute that can be fairly made. *In re Appeal of Angle*, 11 Kan. App. 2d 62, 66, 713 P.2d 962, *rev. denied* 239 Kan. 627

(1986); *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d 108, 109, 673 P.2d 456, *rev. denied* 234 Kan. 1078 (1984). Absent statutory ambiguity, it is our lot and obligation to give effect to the legislature's plain words. We must give effect to the intention of the legislature *as expressed*, rather than determine what the law should or should not be. *In re Adoption of J.G.*, 10 Kan. App. 2d at 484; *Kansas City Power & Light Co. v. Kansas Corporation Commission*, 9 Kan. App. 2d 49, 51, 670 P.2d 1369, *rev. denied* 234 Kan. 1076 (1983).

" 'Where a statute is clear and unambiguous, the court *must* give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be. Thus, no room is left for statutory construction. [Citations omitted.]' " (Emphasis added.) *In re Mary P.*, 237 Kan. 456, 459, 701 P.2d 681 (1985).

"It has long been the rule in Kansas that in determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous language. [Citations omitted.] Even a penal statute subject to strict construction should not be read so as to add that which is not readily found therein, or to read out what, as a matter of ordinary language, is in it. [Citation omitted.] In 73 Am. Jur. 2d, Statutes § 194, it is stated:

" 'A statute is open to construction only where the language used therein requires interpretation or may be reasonably considered ambiguous. Thus, where no ambiguity appears, it has been presumed conclusively that the clear and explicit terms of a statute express the legislative intention. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity.' " *State v. Haug*, 237 Kan. 390, 391-92, 699 P.2d 535 (1985).

"It is a cardinal rule of statutory construction that a clear, unambiguous, constitutional statute is not subject to judicial construction." *State v. Haines*, 238 Kan. 478, 479, 712 P.2d 1211 (1986).

K.S.A. 1986 Supp. 59-2101(c) is a plain and unambiguous legislative expression of its intent that:

1. a written consent to adoption acknowledged before a judge of a court of record is irrevocable;

2. a written consent to adoption acknowledged before an authorized officer other than a judge *and* filed of record in the district court is revocable only if, prior to the final decree of adoption, the consenting party alleges and proves the consent was not freely and voluntarily given; and

3. a written consent to adoption acknowledged before an authorized officer other than a judge is revocable at any time

before it has been filed of record in the district court. (*In re Adoption of J.G.*, 10 Kan. App. 2d at 485.)

By its decision in this case, the majority holds that a written consent to adoption acknowledged before a judge of a court of record and filed of record in the district court is revocable if, prior to the final decree of adoption, the consenting party alleges and proves the consent was not freely and voluntarily given. That is beyond and contrary to the statute.

On multiple occasions, our Supreme Court has alluded to the old adage that "harsh facts make bad law." See *Bowers v. Ottenad*, 240 Kan. 208, 224, 729 P.2d 1103 (1986) (McFarland, J., dissenting); *State v. Hundley*, 236 Kan. 461, 469, 693 P.2d 475 (1985) (McFarland, J., dissenting); *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 438, 617 P.2d 1255 (1980) (Schroeder, C.J., concurring); *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 19, 596 P.2d 446 (1979) (McFarland, J., dissenting and concurring); *Morlan v. Smith*, 191 Kan. 218, 221, 380 P.2d 312 (1963) (Price, J., dissenting). By its reference to worst-case scenarios, the majority opinion proffers harsh facts not existent in the case before us and practices bad law in reaching the result it pronounces. In reaching its achieved end, the majority acts with assumed insight limited only by its conscience. I cannot join in that. It is not within our province to criticize either the wisdom or policy of legislative action, but our duty is to see that such commands are obeyed. *State v. Applegate*, 180 Kan. 186, 190, 303 P.2d 148 (1956); *State v. Wilson*, 42 Kan. 587, 599, 22 Pac. 622 (1889). If there is to be statutory change, that is up to the legislature in the exercise of its wisdom.

The majority opinion states, "This state has wisely determined that the natural mother should have an opportunity to rethink her decision after the child is born and she has had an opportunity, if she desires, to see and hold the child." Regardless of its possible wisdom, I disagree that our state has made such a determination. The majority points to no authority. Elrod, KBA Kansas Family Law Handbook § 6.17 (1983), at subsection 3, observes that:

"Some states require a consent to adoption to be executed a few days after the birth of the child. The Uniform Adoption Act requires that consent to adoption must occur after birth. The purpose of this requirement is to allow the mother to

rethink her decision after seeing and holding the baby. The Kansas statute is silent on the time."

As previously stated, K.S.A. 1986 Supp. 59-2102(a) provides that "[b]efore any minor child is adopted, consent to the adoption must be given by . . . ." In contrast, the Uniform Adoption Act § 7(a), 9 U.L.A. 31 (1979), provides that "[t]he required consent to adoption shall be executed at any time *after the birth of the child* and in the manner following . . . ." (Emphasis added.) Would an "opportunity to rethink" be available to both the mother and the father, or only to the mother? In *In re Adoption of Trent*, 229 Kan. 224, 624 P.2d 433 (1981), the Supreme Court specifically declined to address the question whether the written parental consent there involved was invalid because it was executed prior to the adoptee's birth but, as I see it, implicit in the ordered remand with direction that the adoption be granted is a finding that a written consent to adoption executed and acknowledged prior to the adoptee's birth is not necessarily invalid and insufficient to support an adoption.

From the language of K.S.A. 1986 Supp. 59-2102(c), it is patent to me that, had it been the legislature's intent to do so, not only could it have provided, but it would have provided, that a written consent acknowledged before a judge of a court of record is revocable upon the consenting party's allegation and proof that its consent was not freely and voluntarily given. The legislature's omission of such an "escape clause" or caveat is at least some indication that it was intended that there be no qualification to the statutorily directed irrevocability of written consents acknowledged before a judge of a court of record.

I would affirm.