Mr. George Teagarden Livestock Commissioner Kansas Animal Health Department 712 S. Kansas Avenue, Suite 4-B Topeka, Kansas 66603-3808
Dear Mr. Teagarden:
As Kansas livestock commissioner you pose a number of questions relating to the Kansas animal health department's regulation of various methods of selling exotic and domesticated animals. The regulatory framework concerning the sale of animals is complex with the type of license or registration required, if any, dependent on a number of factors including the legal definition and classification(s) of the animal, whether the sale is wholesale or retail, and the setting of the sale.
You inform us that an "exotic animal market" refers to a consignment auction which an individual or organization has arranged for the sale of exotic animals. This type of market typically occurs at a temporary site such as a rented building (e.g. a fairgrounds building) or outdoors under a large tent. Generally a sale of this type is held by the organizer once or twice a year, and lasts one to three days. Purchasers of the exotic animals are usually animal breeders or other private individuals. You appear to use the term "exotic animals" to refer to a wide variety of unusual animals not indigenous to this geographic area or not usually possessed as pets.
The term "exotic animal" is statutorily defined for several purposes. For instance, the livestock commissioner is authorized to establish rules and regulations on disease control programs for farm animals and exotic animals, including their sale and importation into the state. K.S.A. 47-1832. For purposes of this statute "exotic animal" means "any animal . . . that is native to a foreign country or of foreign origin or character, is not native to the United States, or was introduced from abroad." K.S.A.47-1832; See 9 C.F.R. § 1.1. To date, rules and regulations have not been adopted under this grant of authority.
In another context, the Kansas department of wildlife and parks requires a game breeder's permit in order to raise and sell "exotic wildlife." In this context "exotic wildlife" means:
 "non-migratory wildlife, not native or indigenous to Kansas, or not presently existing in Kansas as an established wild population." K.A.R. 115-20-3.
A third statute, without defining exotic animals, authorizes the livestock commissioner to prohibit the sale or gift of exotic animals that constitute a hazard to human health or safety or to animal health or safety. K.S.A. 47-1713. To date the commissioner has not prohibited the sale or gift of any animal considered exotic.
The first question you pose in effect asks what, if any, licensing requirements are applicable to "exotic animal markets." You pose questions concerning ratites (large flightless birds such as ostrich, rhea and emu), domesticated deer and other unspecified exotic animals. The above-referenced statutes unfortunately do not provide any guidance in reaching an answer. Consequently, for reasons discussed herein, the response to this question is necessarily divided into two sections: (1) ratites and domesticated deer, and (2) other exotic animals.
 Ratites and Domesticated Deer
Under the Kansas animal dealer act (with some exceptions not applicable to this discussion) a pet shop is defined as:
 "any premises where there are sold, or offered or maintained for sale, at retail and not for resale to another: (A) Any dogs or cats, or both; or (B) any other animals. . . ." K.S.A. 47-1701(t).
Within this act the term "animals" is broadly defined:
 "(d)(1) `Animal' means any live dog, cat, rabbit, rodent, nonhuman primate, bird or other warm-blooded vertebrate or any fish, snake or other cold-blooded vertebrate.
 "(2) Animal does not include horses, cattle, sheep, goats, swine or domestic fowl." K.S.A. 47-1701, as amended by 1995 SB 260, § 5.
While this definition does not distinguish between exotic and non-exotic animals, it does differentiate between animals commonly considered as livestock and all other vertebrate animals (excluding humans).
Under the act, any premises (other than those excluded) upon which the retail sale of animals, exotic or otherwise, occurs must be operated by a licensed pet shop operator in a facility which complies with department rules and regulations. K.S.A. 47-1703; K.S.A. 47-1712, as amended by 1995 SB 260, § 8. In addition, any animal, exotic or otherwise, sold by a licensed pet shop operator must be accompanied by a health certificate verifying that such animal is in sound health. K.S.A. 47-1713.
Pursuant to the animal dealers act, ratites and domesticated deer appear to be animals whose retail sale is required to occur on premises operated by a licensed pet shop operator. However, by virtue of K.S.A. 1994 Supp. 47-2201, ratites are made subject to appropriate regulations relating to livestock. In addition ratites and domesticated deer are specifically included within the definition of livestock in the public livestock market laws (along with cattle, swine, sheep, goats, horses and mules), K.S.A. 1994 Supp. 47-1001(b), and in the definition of livestock in the livestock dealer laws (along with cattle, swine, horses, sheep, goats, and poultry), K.S.A. 1994 Supp. 47-1804(b). Therefore, at least some of the animals typically sold in exotic animal markets (ratites, domesticated deer and pot-bellied pigs) are within the legal definitions of "livestock."
Construing the above provisions found within the livestock and domestic animals chapter of the Kansas statutes in pari materia,In re: Adoption of Baby Girl H, 12 Kan. App. 2d 223 (1987), in our opinion ratites and domesticated deer, which are statutorily defined as livestock, are implicitly excluded from the class of animals subject to pet shop operator regulation. Rather, they are placed within laws regulating livestock. Consequently in our opinion a pet shop operator's license is not required to operate premises where only ratites or domesticated deer are sold at retail. If these animals are sold for resale to another, i.e. wholesale, the operator is not required to be licensed as a pet shop operator by virtue of K.S.A. 47-1701(t), the definition of "pet shop." Thus for purposes of discussing your questions, we consider ratites and domesticated deer as livestock.
Regarding the sale of livestock, regulation occurs within two statutory schemes, public livestock market operators and livestock dealers. The former has to do with livestock sold at particular premises:
 "`Public livestock market' means any place, establishment or facility . . . which includes any business conducted or operated for compensation or profit as a public market for livestock, consisting of pens, or other enclosures, and their appurtenances,
in which livestock are received, held, sold, or kept for sale or shipment except that this term shall not apply to any livestock market where federal veterinary inspection is regularly maintained." K.S.A. 1994 Supp. 47-1001(f). (Emphasis added.);
and
 "Public livestock market operator" means any person who, in this state, receives on consignment, or solicits from the producer or consigner thereof, or holds in trust or custody for another, any livestock for sale or exchange, on behalf of such producer or consigner at a public livestock market, or sells, or offers for sale, at a public livestock market, for the account of the producer or consignor thereof, any livestock or directly or indirectly owns, conducts or operates a public livestock market. . . ." K.S.A. 1994 Supp. 47-1001(g). (Emphasis added.)
Thus if livestock, including ratites or domesticated deer, are sold on behalf of a producer or consigner at a premises which falls within the definition of public livestock market, the operator of that market is required to be licensed as a public livestock market operator. K.S.A. 47-1001a. Assuming the premises at issue consist of "pens, or other enclosures" in which ratites or domesticated deer are maintained for sale, the sales operator is required to be licensed as a public livestock market operator.
A livestock dealer, on the other hand, is defined as:
 "any person engaged in the business of buying or selling livestock in commerce, either on that person's own account or as the employee or agent of the seller or purchaser, or any person engaged in the business of buying or selling livestock in commerce on a commission basis and shall include any person who buys or sells livestock with the use of a video. `Livestock dealer' does not include any person who buys or sells livestock as part of that person's own breeding, feeding or dairy operation, nor any person who receives livestock exclusively for immediate slaughter." K.S.A. 1994 Supp. 47-1804(c).
Thus if ratites or domesticated deer are sold at premises not falling within the statutory definition of a public livestock market, the person engaging in the business of selling is required to be registered as a livestock dealer.
The statutory definitions of "public livestock market" and "livestock dealer" indicate that the determinative factor is not whether livestock are sold by consignment auction or by a set price, but rather whether the sale occurs at a business premises which is a "public livestock market" operated by a person who sells livestock on behalf of a producer or consigner. If such is the setting in which a ratite or domesticated deer auction is held, the operator is required to be licensed as a "public livestock market operator." Conversely, if the sales transaction does not take place in that setting, the person who is engaged in the business of selling the ratites or domesticated deer should be registered as a "livestock dealer."
 Other "Exotic" Animals
The above discussion relates only to exotic animals which also fall within the category of livestock under Kansas law. We now turn to non-livestock exotic animals, such as tigers, hedgehogs or bears. (For the sake of simplicity, in the balance of this opinion non-livestock exotic animals will be referred to as exotic animals.) You ask whether the operator of an exotic animal market who sells these kinds of exotic animals at a consignment auction as described above is required to be licensed as a pet shop operator in order to lawfully sell the animals.
As noted above, the animal dealer act presents a very broad definition of pet shop as "any premises where there are sold, or offered or maintained for sale" dogs, cats, or any other animals. K.S.A. 47-1701(t), as amended by 1995 SB 260, § 5. The operator of a pet shop must be licensed, and to become licensed the shop must be in compliance with department regulations, specifically K.A.R. 9-20-1 (facilities), K.A.R. 9-20-2 (animal health and husbandry standards) and K.A.R. 9-20-3 (records). While not stated explicitly, these regulations appear based on an understanding of a pet shop as a fixed premises in which the regular and continual business of selling animals takes place. Consequently application of these regulations to the described exotic animal markets may preclude the operator of the market from becoming licensed as a pet shop operator. Nevertheless, pursuant to the current statutory definition of "pet shop," we are constrained to find that any person who operates a premises where there are sold, or offered or maintained for sale, at retail and not for resale to another, any vertebrate animal, exotic or otherwise, which is not exempted, is required to be licensed as a pet shop operator. Thus operators of exotic animal consignment auctions are necessarily included within the pet shop operator licensing requirement.
 Bird, Dog and Cat Shows
You also inform us that birds, dogs and cats are frequently sold or exchanged at bird shows, dog shows and cat shows. We understand these shows to be exhibitions by owners of birds, dogs and cats at which prizes are awarded in various categories such as best of breed. You ask whether the operator of such a show is required to be licensed as a pet shop operator with the consequent obligation that the premise comply with applicable pet shop regulations. As with the preceding discussion of exotic animal markets, based on the broad definition of pet shop we find no statutory provision which would exclude the sale of dogs, cats or birds at shows from the pet shop operator license requirement.
 Non-profit Organization as Sponsor of Exotic Animal Auction
One of the organizations which sponsors an exotic animal market by holding a consignment auction is the game breeders association, a not-for-profit organization. You ask whether the operator of this auction is required to be licensed as a public livestock market operator. If so, you also ask whether a not-for-profit organization is exempt from the licensing requirement.
Under the public livestock markets act, "person" means an individual as well as a partnership, corporation or association. K.S.A. 47-1001(c). Thus a not-for-profit organization, such as the game breeders association, is considered a "person" for purposes of operating a public livestock market. One of the defining criteria of a public livestock market is ". . . any business conducted or operated for compensation or profit. . . ." We presume that the game breeders association holds its annual auction in order to raise funds to support its corporate purposes and therefore in relation to its exotic animal auction is conducting business for compensation. Consequently, the mere fact that a public livestock market operator is a not-for-profit organization does not create an exemption from the public livestock market operator licensing requirement. By the same reasoning the not-for-profit status of any organization does not create an exemption from otherwise applicable pet shop operator license requirements or livestock dealer registration requirements.
You did not inform us of the types of animals which are sold at the game breeders' annual auction. As discussed, the applicable state regulatory framework in part depends on the kinds of animals sold. If the animals are livestock, depending on the sale setting, a public livestock market operator license or livestock dealer registration is required; if non-livestock, a pet shop operator license is required for any retail sales, but not those for re-sale to another, i.e. wholesale transactions.
In conclusion, ratites and domesticated deer, which are statutorily defined as livestock, are implicitly excluded from the class of animals subject to pet shop operator regulations and consequently are placed within laws regulating livestock. Thus a pet shop operator's license is not required to operate premises where only ratites or domesticated deer are sold at retail. In addition, if these animals are sold for resale to another, i.e. wholesale, the operator is not required to be licensed as a pet shop operator.
If livestock, including ratites or domesticated deer, are sold on behalf of a producer or consigner at premises which fall within the definition of public livestock market, the operator of that market is required to be licensed as a public livestock market operator. If ratites or domesticated deer are sold at premises not falling within the statutory definition of a public livestock market, the person engaging in the business of selling is required to be registered as a livestock dealer.
Any person who operates premises where there are sold, or offered or maintained for sale, at retail and not for resale to another, any vertebrate animal, exotic or otherwise which is not exempted, is required to be licensed as a pet shop operator. Thus operators of exotic animal consignment auctions are necessarily included within the pet shop operator licensing requirement, as are operators of dog, cat and bird shows at which retail sales of animals occur.
The mere fact that a public livestock market operator is a not-for-profit organization does not create an exemption from the public livestock market operator licensing requirement, livestock dealer registration requirement or pet shop operator license requirement.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:bas