THE PEOPLE, defendants in error, *vs.* JOHN J. SKEEHAN, plaintiff in error.

On the trial of an indictment for murder, it appeared that the meeting of the accused and the deceased was casual, they having had no previous acquaintance ; that the accused, taking offense at some trifling remarks made by the deceased, in passing him in the street, near midnight, stabbed the deceased with a knife, which resulted in immediate death. *Held,* that the killing, though groundless, and probably without any intent to take life, was " by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any design to effect the death of any particular individual ;" and that the evidence would have justified a verdict of murder in the first degree'; but if that crime was not established, it was clearly manslaughter in the third or fourth degree. That if not one of these offenses, there was no crime committed, within the definitions of the statutes.

*Held, also,* that the offense was not within the definition of murder in the second degree, and the jury ought not to have been instructed that there was evidence upon which they could be permitted to find such a verdict.

A party is not permitted to assert, or to present evidence to show, that one state of facts is true, and afterwards to assert or prove to the court that his prior evidence was untrue, or not to be relied on. But where a witness has given evidence against the side for the support of which he has been called, and the court can perceive good grounds for apprehending that the witness has testified under a mistake of the facts, or intentionally falsely, and there is no bad faith on the part of the party producing the witness, he is allowed to give evidence explaining, or even contradicting, his own witness.

WRIT OF ERROR to the New York general sessions.

*John Sedgwick,* for the prisoner.

*A. Oakey Hall,* (dist. atty.) for the people.

*By the Court,* LEONARD, P. J. The prisoner was indicted and tried in the court of general sessions, of the city of New York, for the crime of murder, committed in August, 1866.

The meeting of the accused and the deceased was casual ; they had no previous acquaintance. The accused, taking offense at some trifling remarks made by the deceased in passing him, near midnight, which were understood by the companions of the deceased to have no reference to the accused

or to those in company with him, but which, there is reason to believe, the accused misapprehended, and understood to be an impertinent allusion to the hat worn by him or one of his company, stabbed the deceased with a knife, near the arm pit, opening an artery, which resulted in immediate death.

The killing was groundless, probably without any intent to take life, but " by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any design to effect the death of any particular individual." The evidence would have justified a verdict of murder in the first degree; but if that crime was not established, it was clearly manslaughter in the third or fourth degree. The verdict of the jury was " guilty of murder in the second degree."

The statute of 1862, now in force, defines murder in the second degree to be the killing of a human being, when perpetrated without any design to effect death, by a person engaged in the commission of any felony, where it is not murder in the first degree, nor one of the different degrees of manslaughter, nor justifiable or excusable homicide. (*Laws of* 1862, *ch.* 197, § 6. 5 *R. S. p.* 149, *Edmonds' ed.*)

The indictment does not charge, nor does the evidence show, that the accused was engaged in the commission of any felony, except the killing of Thomas Wright, for which he was tried. The judge charged the jury as follows, among other things, viz. " If you are not satisfied on the whole of the testimony, that it is a case of murder in the first degree, or one of justifiable or excusable homicide, you can convict, if the evidence warrants it, of murder in the second degree, or of manslaughter in the third or fourth degree." This was clearly erroneous.

The case was one of murder in the first degree, or manslaughter in the third or fourth degree. If not one of these offenses, there was no crime committed, within the definitions of the statutes. It was not within the definition of murder in the second degree, and the jury ought not to have been

instructed that there was evidence upon which they could be permitted to find such a verdict. The prisoner was proven to be of good character, quiet and peaceable, and the verdict was undoubtedly a merciful one, with which, it might reasonably have been expected by the court, that the prisoner and his counsel would have found much reason for congratulation. The accused was entitled, however, to be tried according to the rules of law; and it is possible that his good character might have raised such a doubt with the jury that they would, if instructed strictly according to the law, have found him guilty of manslaughter only, or even wholly have acquitted him. He has cause to apprehend a more unfavorable result at another trial.

The other objections taken by the prisoner's counsel, are wholly unfounded. The principal one relates to the recalling of certain witnesses, and permitting them to give evidence contradicting that given by others who were present at the homicide, all of them having been produced on behalf of the people. A party is not permitted to assert or present evidence showing one state of facts to be true, and afterwards to assert or prove to the court that his prior evidence is untrue, or not to be relied on. This rule applies to prevent bad faith in presenting a cause. A different rule might be interpreted as lending countenance to perjury. Here all the witnesses who knew any of the facts or circumstances, attending the homicide, were put upon the witness' stand to give their version of what they saw or knew. There is no reason to suppose that the counsel for the people attempted to offer any evidence which he knew to be false. Where a witness has given evidence against the side for the support of which he has been called, and the court can perceive good grounds for apprehending that the witness has testified under a mistake of the facts, or intentionally falsely, and there is no bad faith on the part of the party producing the witness, he is allowed to give evidence explaining, or even contradicting, his own witness. In this case, the two companions of the prisoner

stated the occurrence quite differently from the two who were with the deceased, and also from the policeman, who was near at the time of the occurrence, and on the spot before the death of Wright, and made the arrest; and they also stated many occurrences quite differently from each other, in many particulars. The policeman and one of the companions of the deecased were recalled, and gave evidence in respect to certain facts testified to by the companions of the prisoner, not mentioned by the others who were present, and had an equal opportunity to see and hear all that the companions had testified to. This was objected to by the prisoner's counsel as a contradiction of evidence given by witnesses called on behalf of the people. The evidence so objected to was clearly within the rule I have above adverted to, and was properly admitted.

There were also some exceptions taken to the statement, by the judge, of facts proven by the witnesses in the case. It is well settled that this is no ground of valid exception, and I am unable to perceive that any injustice was done, or even any mistake made in the statements referred to.

It is unnecessary, from the view I have taken of the charge, to examine more minutely all the grounds of exception taken by the prisoner's counsel. I find no other error occurring in the case, except the one mentioned, but upon that ground the judgment should be reversed, and the case remitted to the sessions for a new trial.

[NEW YORK GENERAL TERM, June 8, 1867. *Leonard, Clerke* and *Welles,* Justices.]