THE STATE OF KANSAS v. JOSEPH J. SPENDLOVE.

1. MURDER — *Amended Information — Practice.* An information was filed charging the defendant with murder in the first degree. Subsequently the defendant was tried, convicted, and, upon appeal to the supreme court, the conviction was set aside and a new trial granted. Thereafter, the county attorney, without consent of the court, and without notice to or the consent of the defendant, filed an amended information, also charging the defendant with murder in the first degree. The defendant made no motion to strike the amended information from the files, but filed a motion to quash, upon the ground, among others, that the information was filed without leave of the court and without notice to him or his consent. After the motion to quash was filed, and before it was passed upon by the court, the prosecution obtained leave of the court to indorse the names of additional witnesses upon the amended information. The defendant objected, but notified the court that he desired a copy of the amended information to be served upon him. Subsequently, he refused to plead to the amended information, and asked to be tried upon the old information. The court directed a plea of not guilty to be entered for the defendant upon the new or substituted information, and required him to be tried thereon. He was subsequently convicted of manslaughter in the first degree. *Held,* That the amended or substituted information must be considered as occupying the same position after the indorsements of the names of additional witnesses thereon and the refusal to quash, as if the court had expressly allowed the information to be amended or substituted and filed.

2. STATUTE, *Construed.* Section 12, chapter 31, of the act relating to crimes and punishments, (¶ 2133, Gen. Stat. of 1889,) is expressly applicable to all crimes or misdemeanors, not amounting to felony, and an assault and battery is within the statute. Intentional violence upon the person killed is not excluded by the statute.

3. JUDGMENT — *Technical Errors.* Judgment must be given in the supreme court upon appeal in criminal cases without regard to technical errors or instructions which do not affect the substantial rights of the parties.

*Appeal from Shawnee District Court.*

PROSECUTION for murder in the first degree. From a conviction for manslaughter in the first degree, at the January term, 1891, the defendant, *Spendlove,* appeals. The facts are

substantially stated in *The State v. Spendlove,* 44 Kas. 1–11, and in the opinion herein, filed on October 10, 1891.

*A. H. Case, J. S. Ensminger,* and *Charles Curtis,* for appellant.

*John N. Ives,* attorney general, and *R. B. Welch,* county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: An information was filed in the district court of Shawnee county charging Joseph J. Spendlove with murder in the first degree, in killing and murdering Gustave Werner. He was tried at the September term, 1889, of the district court of said county, convicted of murder in the second degree, and sentenced to imprisonment for the term of 21 years. He appealed, and this court reversed the judgment at its January term, 1890. (*The State v. Spendlove,* 44 Kas. 1–11.) After the case was reversed, and on the 27th day of September, 1890, without leave of court and without notice to the defendant, the county attorney filed an amended information, in which he charged the defendant with murder in the first degree. The defendant filed a motion to quash this amended information, and set up, with others, the following reason: "That said amended information was filed by the county attorney after the defendant had entered a plea of not guilty in the case, and without leave of the court, and without the notice, knowledge or consent of the defendant." After the motion to quash was filed, but before it was passed upon, the prosecution applied to the court to indorse the names of additional witnesses upon the amended information. The defendant objected, but the court granted the application, and thereupon the defendant excepted, and gave notice that unless another copy of the amended information, with the additional names indorsed thereon, was served upon the defendant, he would, at the proper time, object to being tried upon the amended information. The motion to quash was overruled by the court, to which ruling the defendant at the time ex-

11 — 47 KAS.

cepted.. The defendant demanded a trial upon the old information, refused to plead to the amended information, and objected to the introduction of evidence under the amended information. All of these motions were overruled by the court, and excepted to by the defendant. He was tried upon the amended information, found guilty of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary for 16 years. From this he appeals to this court.

Section 72 of the criminal procedure reads:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave. The information may be amended on the trial as to all matters of form, at the discretion of the court, when the same can' be done without prejudice to the rights of the defendant. ᐧ No amendment shall cause any delay of the trial, unless for good cause, shown by affidavit."

It has already been decided by this court that, after a new trial has been granted, the attorney for the state, with consent of the court, may enter a *nolle prosequi*, and thereafter the defendant may be put upon his trial and convicted upon a new information, charging the identical offense set forth in the prior one. (*The State v. Hart*, 33 Kas. 218.) The amended information in this case was filed on the 27th of September, 1890. The motion to quash was filed on the 13th day of December, 1890. This motion was overruled on the 26th day of January, 1891. No motion was made to strike the amended information from the files. When the motions to indorse additional names and to quash the amended information were presented to the court, the court's attention was thereby called to the matters contained in the new information, and when one motion was allowed and the other overruled, the court thereby gave permission for the new information to be substituted for the old one. The amended information, therefore, was filed with leave of the court. From and after January 26, 1891, the amended information occupied the same position as if the court had expressly allowed it to be filed. When the defendant refused to plead

1. Murder— amended information.

to this information, the court properly directed a plea of not guilty to be entered. The amended information was filed in ample time, and as the trial court permitted the same to be substituted, no error prejudicial to the rights of the defendant can be fairly founded upon the rulings of the court in refusing to try the defendant upon the original information, or in requiring the defendant to be tried upon the amended or substituted information.

Upon the trial, after instructing the jury concerning murder in the first and the second degrees, the district court further instructed the jury that—

"Next, as to manslaughter in the first degree. To constitute manslaughter in the first degree, the act must be the killing of a human being without a design to effect death, by the act, procurement, or culpable negligence of another person, while such other person is engaged in the perpetration of, or attempting to perpetrate, some crime or misdemeanor, not amounting to felony, in case where such killing would be murder at the common law. . . . In this case Joseph J. Spendlove is charged with the crime of murder in the first degree, as recited in the amended information, and while this is nominally the charge made in the amended information, in contemplation of law, however, it includes the charge of murder in the second degree, and the charge of manslaughter in each of the four degrees described in the statutes of the state, as already explained, and the amended information would allow a verdict of guilty in any of these minor offenses, provided the evidence in the case would warrant such a verdict. . . . If the guilt of the defendant is not proven to be that of murder in the first degree or second degree, or of manslaughter in the first degree, beyond a reasonable doubt, then you may proceed to inquire whether he is guilty of manslaughter in the second degree."

These instructions were properly excepted to. It is contended upon the part of the defendant that it was error to give the instructions referred to, and it is further contended that there was no evidence introduced upon the trial proving or tending to prove a case of manslaughter in the first degree. We are therefore called upon to construe § 12 of chapter 31, of the act regulating crimes and punishments. (Gen. Stat. of

1889, ¶ 2133.) That is the section under which the defendant was convicted. It reads:

"The killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration, or attempt to perpetrate, any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

This section appears in chapter 48 as § 7 of the Territorial Laws of Kansas for 1855. It has been continued in force since that time. (Terr. Stat. of Kas. 1859, ch. 28, § 7; Comp. Laws of 1862, ch. 33, § 7; Gen. Stat. of 1868, ch. 33, § 12; Comp. Laws of 1879, ch. 31, § 12; Gen. Stat. of 1889, ¶ 2133.)

In support of the contention of the defendant, it is said that § 12 of chapter 31 was borrowed from Missouri; that, as the supreme court of that state has decided that, to bring a case under this statute within manslaughter in the first degree, it is necessary to show the accused was committing, or attempting to commit, some misdemeanor other than intentional violence upon the person killed; that the facts in this case conclusively establish that the instruction concerning manslaughter in the first degree was wholly applicable; and that the verdict was without any evidence whatever to support it. The claim is, that the jury might as well have found the defendant guilty of manslaughter in the first degree in assisting Werner in the commission of self-murder, or of manslaughter in the first degree for the willful killing of an unborn child.

Our statute was evidently taken from Missouri, as the Missouri statute is identical with it. (Rev. Stat. Mo. 1879, § 1238.) But the rule of *Bemis v. Becker*, 1 Kas. 217, that whatever construction has been given to the statute by the courts of Missouri must follow it to this state, does not hold good, because the supreme court of Missouri, prior to 1855, when this statute was incorporated into the body of the criminal laws of Kansas, had not judicially construed or interpreted it. In 1871, long after the statute referred to was first adopted

by the legislature of Kansas, the supreme court of Missouri, in *The State v. Sloan*, 47 Mo. 604, construed the statute as before stated. In support of its decision it referred to the following cases from New York: *The People v. Butler*, 3 Parker's Crim. Rep. 377; *The People v. Sheehan*, 49 Barb. 217; *The People v. Rector*, 19 Wend. 605. In *The State v. Downs*, 91 Mo. 19, decided in 1886, the case of *The State v. Sloan* was approved.

From 1838 to 1867, and for some time after that year, New York had a statute similar to the statute of Missouri and our own. (2 N. Y. R. S. 656–7.) Since then the statute has been changed in New York, and manslaughter in the first degree is now defined as follows:

"In a case other than one of those specified in the §§ 183, 184, and 185, homicide, not being justifiable or excusable, is manslaughter. Such homicide is manslaughter in the first degree, when committed without a design to effect death, either, (1) by a person engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property either of the person killed, or of another; (2) in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." (Vol. 2, N. Y. Rev. Stat. of 1890, page 1382.)

All of the decisions referred to by the Missouri supreme court are decisions of inferior courts in the state of New York, excepting the case of *The People v. Rector*, 19 Wend. 605. In that case, Cowen, J., expressed one opinion. Bronson, J., delivered a different opinion, and the chief justice finally decided the case, principally agreeing with Bronson, J., but saying little, if anything, concerning the construction of the statute relating to manslaughter in the first degree.

In the case of *Darry v. The People*, 10 N. Y. 120 (1854), opinions were delivered by Selden, J., Denio, J., and Parker, J., favoring a new trial. Three other members of the court of appeals concurred in their views, and reversed the judgment of the supreme court.

Selden, J., in referring to *The People v. Rector*, 19 Wend. 569, said:

"This subdivision was incidentally and partially consid-

ered, but the examination given to it was cursory merely, and no attempt was made to subject it to the rigid analysis which is indispensable to the development of its true meaning."

Denio, J., in his opinion said:

"I have not óverlooked the opinions incidentally expressed by Chancellor Walworth and Mr. Justice Bronson, in *The People v. White*, ( 24 Wend. 520,) and in *The People v. Rector*, (19 Wend. 569.) In neither of these cases was this question presented; and in both of their opinions, those learned judges were dissentients from the judgment of the court upon the points decided in those cases."

Parker, J., in criticising *The People v. Rector*, 19 Wend. 591–608, said:

"But it has been said that the 6th section of the statute defining manslaughter in the first degree is not applicable to a case where the party causing death without design is engaged in an assault and battery. I find no warrant for such a position. No exception of that offense is made in the statute. The language is, 'the killing of a human being, without a design to effect death, by the act, procurement, or culpable negligence of another, while such other is engaged: (1) in the perpetration of any crime or misdemeanor not amounting to a felony; or, (2) in an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law, shall be manslaughter in the first degree.' This section is thus made expressly applicable to all crimes and misdemeanors not amounting to felony, and it is certain an assault and battery is one. The statute nowhere confines this section and the third subdivision of the section defining murder to other offenses than those of intentional violence. It is said that this plain construction of the act would make every case murder, because, being engaged in an assault, and death ensuing, it becomes the felony of manslaughter, and being engaged in such felony, and death ensuing, it is murder. But it leads legitimately to no such result. The intent regulates the crime, unless otherwise provided. If the party intends an assault and battery, and death ensues without design, he is guilty of manslaughter. If he intends a mayhem or other felony to the person, and death ensues without design, it is murder. . . . It is objected, that if my construction of the first degree of manslaughter is correct it would cover every other degree of manslaughter. For in every case provided for in the lower

degrees there is also an assault and battery, and death ensues.
I answer, the general description in the first degree cannot be
considered as applicable to cases particularly described in the
lower degrees.   The first degree gives the general desription;
the lower degrees the exceptions, as where the act is done in
the heat of passion, etc.   It is far more consistent to hold that
the description in the first degree does not apply to cases de-
scribed in the second and third degrees, than to hold it is not
applicable to any case of assault and battery where death en-
sues.    There is much less violence done to the language of the
section by my construction than by that against which I con-
tend.    There is reason in holding that the first section, being
in general terms, is not applicable to cases specially described.
Though within the general language, it may well be supposed
the legislature did not intend to include them, because they
are provided for specially in other sections.    But it seems to
me it is refusing obedience to the statute to say that it is not
intended to be applied to any case of assault and battery, when
no exception of that offense is made."

Heretofore we have never been called upon to construe said
§ 12.   It is an original question with us.   The decisions of
Missouri were made subsequent to the adoption of our statute;
therefore they are not conclusive.   The Missouri supreme
court has followed certain decisions of New York, and con-
strued its statute according to those decisions.   If we are to
go to New York for decisions construing this statute, the views
of the judges in *Darry v. The People,* supra, are more satisfac-
tory to us than any others.   We prefer to take the construction
of the statute by the highest court of the state, rather than
from inferior tribunals.   The statute is "expressly applicable

2. Statute, con-
strued.

to all crimes or misdemeanors not amounting to
a felony, and an assault and battery is one."
There are no exceptions as to any crime less than a felony.
Intentional violence upon the person killed is not excluded.
If we follow the Missouri construction, we virtually wipe out
said § 12, because, as judicially interpreted by that court, it
can have but little operation.   We therefore conclude that the
instructions referred to were not inapplicable to the case, and
that there was sufficient evidence introduced upon the trial to

authorize the jury to find the defendant guilty of manslaughter in the first degree.

The defendant requested the district court to give the following instruction:

"The law at the outset clothes the defendant, in a criminal case involving the charge of murder, with the presumption of innocence, and when the proof tends to overthrow this presumption and to fix upon the defendant the perpetration of such a crime, the latter is permitted to support the original presumption of innocence by proof of good character for peace and quietness, and the good character of the defendant for peace and quietness is itself a fact in the case. It is a circumstance tending, in a greater or less degree, to establish his innocence. And therefore, in the present case, the good character of the defendant, if proven to your satisfaction, is to be considered by you, in connection with the other facts in this case, in determining the guilt or innocence of the defendant."

The court refused this instruction, but gave the following:

"There has been evidence offered by the defendant respecting his good character as a peaceable, orderly, law-abiding citizen. Such evidence is competent and proper to be considered by the jury, in connection with the other evidence in the case, in determining the guilt or innocence of the defendant respecting the matters charged against him. Such evidence is particularly important for the defendant in cases where there may be doubt as to his guilt, and in all such cases good character, if clearly proven, should resolve such doubt, whatever it may be, in favor of the defendant; but in cases where all the evidence in the case clearly shows guilt beyond a reasonable doubt, then former good character would be of little avail."

The instruction given, as was stated in *The State v. Douglass*, 44 Kas. 618, is subject to criticism. Evidence in criminal cases of the good character of the defendant may be introduced for the purpose of disproving guilt; and if, upon the whole of the evidence introduced, including that of the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, he should be acquitted. (3 Am. & Eng. Encyc. of Law, 110, 111.) But the instruction given is not as bad as those condemned in *Kistler v. The*

*State*, 54 Ind. 400, and *The People v. Doggett*, 62 Cal. 27.   In the Kistler case, the court instructed the jury that "where the guilt is positively proven, then good character will not benefit the defendant."   In the Doggett case, the court instructed the jury "that good character was only applicable in doubtful cases to turn the scale, when the jury was in doubt, from the other evidence, as to whether the defendant was guilty or not." The last two or three lines of the instruction given ought to have been omitted, but we are unwilling to say that the instruction was so erroneous or misleading as to demand a new trial.

After the district court had instructed the jury at very great length concerning murder in the first and the second degree, and the various degrees of manslaughter, it further instructed the jury as follows:

"If you do not find beyond a reasonable doubt that the defendant, Spendlove, deliberately fired a shot at Werner in the front room of the building, and that Werner retreated in attempting to get away from the defendant into another room, and that the defendant, Spendlove, followed the deceased to the door or opening into another room for the purpose of further assaulting the deceased; or if you have a reasonable doubt upon either of these propositions, then if Spendlove did not commence the combat by firing deliberately a loaded pistol at the body of Werner within striking distance of said Werner, but that Werner and Spendlove went to or near the door or entrance to the back room, and the combat there took place, then I instruct you —"

And thereupon gave ten instructions, marked A, B, C, D, E, F, G, H, I, and J.   D was as follows:

"If the evidence leaves you in doubt as to what the acts of the deceased were at the time or immediately before the killing, you may consider the threats and character of the deceased in connection with all the other evidence in determining whether he was probably the aggressor."

It is contended that the language just prior to A, B, C, etc., was misleading; that it prevented the jury from considering all the instructions before reaching a verdict; that they

were prevented from considering the theory of the defense until after they had considered all of the evidence of the prosecution and were in doubt upon that of the guilt of the defendant.

In addition to the instruction D, concerning threats, etc., of the deceased, the court also instructed the jury in J, as follows:

"If you should believe from the evidence that Werner made threats towards or against Spendlove, or that he entertained ill feeling towards him, or that he was a wicked or depraved person, this would not excuse or justify Spendlove or any other person to make an assault on him or kill him. No person can take the law into his own hands to correct his real or imaginary grievances or wrongs. But if you believe from the evidence that the deceased, Werner, was an irritable and quarrelsome man, or that he had made threats to put Spendlove out of the building; that he would cut his throat if he didn't get out, or run his scissors through him if he did not get out; or, that if he fooled with him he would learn a trick or kill him; or, if on the day of the shooting he said, if Spendlove was not out of there inside of 24 hours he would be carried out; that on the evening of the occurrence Werner was nervous, sweating, and talking about his trouble, and that he was going to put Spendlove out; and that Werner had been indicted for selling intoxicating liquors and accused Spendlove of having him indicted and was mad about it; and if you are satisfied that several persons saw Werner have a revolver with him a few days before the shooting, and that but one revolver was found at the place, and that was found between Werner's legs, and no explanation has been made of what became of the revolver seen in Werner's possession before the shooting, then I instruct you that you should take such of the above matters, as you believe to be established by proof, into consideration in determining the part Werner took in the affair and in determining the guilt or innocence of the defendant."

We think that the prefix to A, B, C, etc., might have been properly omitted; and yet, in view of all the instructions given, we do not think that it diverted the attention of the jury from all the instructions given, or withdrew any part of the instructions, or the effect thereof, from the jury, to the prejudice of the rights of the defendant. At the last trial the threats and

actions of the deceased were fully commented upon, and the attention of the jury directly called thereto.    If the jury had found the defendant guilty of murder in the first or second degree, the argument would be much stronger in favor of the theory that the language just prior to A, B, C, etc., might have been prejudicial.    But with a verdict of manslaughter in the first degree only, the jury of necessity, under the instructions of the court, must have considered A, B, C, etc., with the other instructions, and upon all the instructions and the evidence they reached the conclusion that the defendant was guilty of manslaughter in the first degree, but not of any degree of murder.    The criminal code expressly provides that, on an appeal, the supreme court must give judgment without

3. Judgment—
technical
errors.

regard to technical errors and defects or to instructions which do not affect the substantial rights of the parties.  (Sec. 293, Gen. Stat. of 1889, ¶ 5355.) The errors which we have referred to, in our opinion, are technical, not substantial.

The defendant has twice been tried.    Upon the first trial, the verdict against him was for murder in the second degree. On account of the failure of the trial court to give a proper instruction concerning the threats of the deceased, we reversed that conviction, and granted a new trial.    We all concurred in the judgment of reversal; but some things were said in the opinion, in the way of argument, about insufficient or unsatisfactory evidence, that it was not necessary for all of us to approve as conclusions of fact from the evidence introduced. Spendlove has been convicted again; this time of manslaughter in the first degree.    There is evidence in the record sustaining the conviction.    The other alleged errors presented to us have also been fully considered.    We do not think any of them sufficient to demand another trial.    The evidence, although not as satisfactory as we could wish, convinced the last jury of the guilt of the defendant of manslaughter, and the district court has approved that verdict and passed sentence thereon.    Upon the record, we decline to interfere further.

The judgment of the district court will be affirmed.

JOHNSTON, J., concurring.

VALENTINE, J.: I concur in affirming the judgment, but I do not wish to be understood as concurring in all that is said in the foregoing opinion. The case is a perplexing one. Additional evidence was introduced on the last trial showing additional threats on the part of Werner, and that he owned or possessed a revolver. Among such additional evidence is that of Charles Beams, who testified, among other things, that on the evening of March 20, 1889, the evening on which the shooting occurred, at about 7 o'clock in the evening, or within two hours before the shooting occurred, he went to Werner's place of business, the place where the shooting occurred, and he there saw Werner with a revolver in his hand. With reference to this matter Beams testified, among other things, as follows: "He (Werner) was in the back part of the room, standing with his back to the door when I first went in. I walked back toward him and he turned around, and he had a 38 or 34 calibre revolver in his hand, as near as I could tell. I was within about eight feet of him. He was muttering over something, I could not understand what it was." A revolver with which it was claimed the shooting was done was then shown to the witness, and he was asked if the revolver which Werner had resembled that one, and he answered: "It looks like it, but I could not say whether this is the revolver. That is about the size of it, as near as I could ascertain." Only one pistol was found about the place. The case is a mystery; but as two juries have found the defendant guilty, one of murder in the second degree, and the other of manslaughter in the first degree, it should require a pretty strong case to authorize a reversal.