(943 P.2d 947)
No. 75,451

STATE OF KANSAS, *Appellee*, v. GARY A. ULLAND, *Appellant*.

Opinion filed August 15, 1997.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Debra S. Peterson*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ROYSE, P.J., ELLIOTT, J., and J. BYRON MEEKS, District Judge, assigned.

ROYSE, J.: Gary A. Ulland appeals his conviction on one count of involuntary manslaughter. He argues that his conviction for involuntary manslaughter cannot be based on misdemeanor battery. Ulland also argues that the district court erred in denying his motion for mistrial, based on the State's violation of an order in limine regarding polygraph evidence.

Ulland called the Derby police department on December 29, 1994, reporting that he had discovered his wife, Anna, was not breathing. When police officers arrived at the Ulland home, they found Anna lying on the waterbed in her bedroom. Ulland showed the officers a vodka bottle and stated that Anna had drunk the contents of the bottle the previous night. The officers observed bruises below the knees on both of Anna's legs, and on her face. The officers attempted CPR until emergency personnel arrived. Anna was transported to the hospital, where she died.

The coroner who performed the autopsy observed numerous bruises and abrasions on Anna's body. He determined the cause of death was a blood clot in the brain resulting from some form of blunt trauma to the head. The coroner believed the fatal injury was likely caused by falling on a hard surface.

Ulland initially told investigating officers that Anna had tripped several days earlier, falling against a table and wall and striking her head. Ulland told the officers that, on the night she died, he discovered Anna had fallen out of bed and he thought she might have struck her head on the bed. He noticed she was breathing erratically and put her back in bed. During a second interview, Ulland stated that "something could have happened" on the night Anna died but he could not remember. Ulland later told officers that he shoved Anna into the bedroom and he thought she hit her head. Ulland said he heard a thump and everything got quiet. During the final interview with police officers, Ulland denied striking or kicking Anna. He admitted shoving Anna but denied seeing her fall. He said she was always drunk and falling into walls.

The State charged Ulland with involuntary manslaughter under two alternative theories: (1) unintentionally and recklessly killing Anna or (2) unintentionally killing Anna while in the commission of a battery, a misdemeanor enacted for the protection of human

life or safety. At the conclusion of trial, the jury found Ulland guilty of involuntary manslaughter under the second theory. The district court sentenced Ulland to 52 months' imprisonment. Ulland appeals.

Ulland's first argument on appeal is that his conviction for involuntary manslaughter cannot be based on misdemeanor battery. Ulland contends that the merger doctrine which limits the felony-murder rule in Kansas also applies to involuntary manslaughter. Specifically, Ulland contends that his misdemeanor battery was not distinct from the homicide and therefore merged with the homicide, thus, precluding a conviction for involuntary manslaughter. This argument presents a question of statutory interpretation, subject to unlimited review on appeal. *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

Ulland was convicted under K.S.A. 21-3404(b), which provides:

"Involuntary manslaughter is the unintentional killing of a human being committed:

. . . .

(b) in the commission of, or attempt to commit, or flight from any felony, other than an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto, that is enacted for the protection of human life or safety or *a misdemeanor that is enacted for the protection of human life or safety* . . . ." (Emphasis added.)

Ulland's involuntary manslaughter charge was based on misdemeanor battery, contrary to K.S.A. 21-3412.

The Kansas felony-murder rule is contained in K.S.A. 21-3401(b): "Murder in the first degree is the killing of a human being committed: . . . . (b) in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto." The purpose of the felony-murder rule is to deter those engaged in felonies from killing negligently or accidentally. *State v. Hobbs*, 248 Kan. 342, 345, 807 P.2d 120 (1991); *State v. Hoang*, 243 Kan. 40, 42, 755 P.2d 7 (1988). In felony-murder cases, the State is relieved of the burden of proving malice and premeditation; those elements are supplied by proof of the defendant's felonious conduct if a homicide results. *Hobbs*, 248 Kan. at 345.

In interpreting our felony-murder statute, the Supreme Court has imposed two limitations on the application of the felony-murder doctrine. First, the underlying felony must be one which is inherently dangerous to human life. *State v. Humphrey*, 252 Kan. 6, 11, 845 P.2d 592 (1992). The legislature made this limitation a part of the statutory definition of felony murder as of July 1,1993. L. 1992, ch. 298, § 3. Second, the merger doctrine requires that the elements of the underlying felony must be so distinct from the homicide so as not to be an ingredient of the homicide. *State v. Lucas*, 243 Kan. 462, Syl. ¶ 2, 759 P.2d 90 (1988), *aff'd on rehearing* 244 Kan. 193, 767 P.2d 1308 (1989). Put another way, the underlying felony must be an independent collateral felony. The lethal act itself cannot serve as the independent collateral felony necessary to support a felony-murder conviction. *State v. Prouse*, 244 Kan. 292, 296-97, 767 P.2d 1308 (1989); *State v. Clark*, 204 Kan. 38, 44, 460 P.2d 586 (1969). See *State v. Leonard*, 248 Kan. 427, 807 P.2d 81 (1991); Note, *Criminal Law—Felony Murder in Kansas—The Prosecutor's New Device: State v. Goodseal*, 26 Kan. L. Rev. 145, 152-155 (1977). The legislature has now enumerated those felonies which are subject to the merger doctrine. K.S.A. 21-3436(b).

One writer has explained that the merger doctrine "was conceived in the nineteenth century as a limitation on the felony-murder rule necessary to preserve the distinctions between first and second degree murder and manslaughter." Comment, *The Merger Doctrine as a Limitation on the Felony-Murder Rule: A Balance of Criminal Law Principles*, 13 Wake Forest L. Rev. 369, 377 (1977).

Kansas adopted the merger doctrine in *State v. Fisher*, 120 Kan. 226, 243 Pac. 291 (1926). Fisher was convicted of felony murder in the death of John Michael Foley, a young boy who was traveling with other members of his family. The boy's father drove without permission over the fields of the defendant's father, stopping periodically to cut fences so that they could continue. Fisher fired two or three shots at the automobile. He stated he fired at the tires and the gasoline tank in order to stop the car. One of the shots struck the boy, killing him.

On appeal, Fisher argued that the trial court had incorrectly instructed the jury on felony murder. The Supreme Court agreed, rejecting the State's contention that a murder committed in the perpetration or attempt to perpetrate any other felony is felony murder:

"The effect of [the State's contention] would be to make any homicide, not excusable or justifiable, which by our statute is defined to be manslaughter in any of the degrees, or murder in the second degree, to constitute murder in the first degree. In other words, there could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree." 120 Kan. at 230.

To avoid the problem arising from the State's suggested interpretation of the statute, the court held: "[T]he other elements constituting the felony must be so distinct from that of the homicide as not to be an ingredient of the homicide, convictable under an information charging the homicide as murder." 120 Kan. 226, Syl. See *State v. Jones*, 257 Kan. 856, 864-65, 896 P.2d 1077 (1995); *Prouse*, 244 Kan. at 300-01 (Holmes, J., concurring); *Clark*, 204 Kan. at 42-44.

The Supreme Court used a similar rationale in *Lucas*. In that case, Lucas was convicted of two counts of child abuse and one count of felony murder. Lucas argued on appeal that the felony-murder conviction must be reversed, because the child abuse charge merged with the murder and could not constitute the requisite collateral felony to support the felony-murder charge.

The court described the issue in *Lucas* as follows:

"Rather, the issue herein is whether the underlying or collateral felony is so distinct from the homicide as not to be an ingredient of the homicide. If the underlying felony does not meet this test it is said to merge with the homicide and preclude the application of felony murder. Thus, a crime such as second-degree murder may not serve as the underlying felony supporting first-degree felony murder because second-degree murder is one of the lesser included offenses of first-degree murder. Otherwise, all degrees of homicide would constitute murder in the first degree, regardless of the defendant's intention or premeditation." 243 Kan. at 466.

The court concluded that a single instance of assaultive conduct will not support the use of abuse of a child as the collateral felony

for felony murder when that act is an integral part of the homicide. Moreover, evidence of prior acts of abuse cannot be used to escalate the charge into felony murder. Finally, the court invited the legislature to consider legislation which would make a death of a child occurring during the commission of the crime of abuse of a child felony murder, "[i]f additional protection for children is desired." 243 Kan. at 473. See *Prouse*, 244 Kan. 292. The legislature adopted such a provision in 1989. See L. 1989, ch. 87, § 1.

In a number of decisions, our Supreme Court has ruled that the merger doctrine does not apply to involuntary manslaughter: an involuntary manslaughter conviction can be based on a misdemeanor directed against the victim. *State v. Roberson*, 210 Kan. 209, 211-12, 499 P.2d 1137 (1972); *State v. Severns*, 158 Kan. 453, 457, 148 P.2d 488 (1944); *State v. Merriweather*, 136 Kan. 337, 338, 15 P.2d 425 (1932).

In *State v. Spendlove*, 47 Kan. 160, 28 Pac. 994 (1891), the court gave three reasons for refusing to apply the merger doctrine to manslaughter. First, the court observed that the statutory definition of manslaughter was a killing committed during the perpetration of any crime or misdemeanor not amounting to a felony. The statute by its terms applied to all misdemeanors; it contained no exception for assault or battery. Second, the court concluded that resort to the merger doctrine was unnecessary to distinguish cases of manslaughter committed during the perpetration of a misdemeanor from other types of homicide. Finally, the court concluded that if the merger doctrine were applicable to misdemeanor manslaughter the statute would have little effect. 47 Kan. at 166-67.

Ulland acknowledges the foregoing line of cases. He argues that they are not controlling, however, because they construed an involuntary manslaughter statute which is no longer in effect. While Ulland is correct that the statutory definition of involuntary manslaughter has changed, his arguments that the merger doctrine should now be applied to 21-3404(b) are not persuasive.

First, Ulland argues that 21-3404(b) is patterned after K.S.A. 21-3401(b). Specifically, Ulland points to the fact that both statutes use the prefatory language "in the commission of, or attempt to commit, or flight from . . ." Ulland also contends that both stat-

utes have the same purpose, the protection of human life and the imposition of penal sanctions against an individual who commits a homicide during the commission of another offense. Finally, Ulland notes that both statutes became effective in their present form in 1993. Based on these factors, Ulland concludes that the statutes are *in pari materia* and should be read together in construing 21-3404(b).

Ulland supports this argument by citing *State v. Bradley*, 215 Kan. 642, 527 P.2d 988 (1974). In *Bradley*, the defendant was convicted of two counts of aggravated assault of a law enforcement officer, contrary to K.S.A. 21-3411. On appeal, Bradley argued that the State had failed to prove he knew one of the victims was a law enforcement officer. The Supreme Court rejected Bradley's contention that scienter was an element of the crime of aggravated assault of a law enforcement officer. In doing so, the court compared 21-3411 to K.S.A. 21-3416, unlawful interference with a fireman or firefighter.

"In section 21-3416 the legislature expressly included *scienter* as an element of the offense. Therefore, it may be concluded the term 'knowingly' would have been used in section 21-3411, if the legislature had intended that *scienter* also be an element of aggravated assault on a law enforcement officer. Its absence is compelling evidence that the legislature did not intend to require *scienter*." 215 Kan. at 647.

The reasoning used in *Bradley* can also be applied in this case. As noted above, the legislature has now adopted a provision which explicitly applies the merger doctrine to felony murder when the underlying felony is one of a list of specified felonies. K.S.A. 21-3436(b). Had the legislature intended to change the long-standing rule and apply the merger doctrine to involuntary manslaughter, it obviously knew how to do so. The absence of such a provision from 21-3404(b) is compelling evidence that the legislature did not intend to apply the merger doctrine to involuntary manslaughter.

The reasons stated in *Spendlove* for refusing to apply the merger doctrine to an older version of involuntary manslaughter are still applicable. K.S.A. 21-3404(b) refers to "a misdemeanor that is enacted for the protection of human life or safety." The statute by its terms applies to all misdemeanors enacted for the protection of

human life or safety; it contains no exception for battery. Second, the merger doctrine is not needed as a method to distinguish cases of involuntary manslaughter under 21-3404(b) from other types of homicide. In other words, applying the involuntary manslaughter statute as written will not render the other homicide statutes superfluous. Finally, if the merger doctrine were applied to 21-3404(b) the statute would have little effect, if any.

For all the foregoing reasons, we conclude that the merger doctrine does not apply to 21-3404(b). Ulland's conviction for involuntary manslaughter was properly based on an unintentional killing committed in the course of the commission of misdemeanor battery. Thus, the district court did not err in rejecting Ulland's merger argument.

Ulland next argues that battery is not a "misdemeanor that is enacted for the protection of human life or safety" as that phrase is used in 21-3404(b). In support of this argument, Ulland presents a restatement of his merger doctrine argument and an examination of the differences between first-degree manslaughter and fourth-degree manslaughter under statutes which were repealed in 1969. These contentions are not persuasive.

Although the legislature has not defined misdemeanors "enacted for the protection of human life or safety," the language of both 21-3404(b) and 21-3412 is plain and unambiguous. Thus, this court must give effect to that statutory language and not add or subtract from what is readily found in the statute. *State v. Alires*, 21 Kan. App. 2d 139, 895 P.2d 1267 (1995).

The plain language of the battery statute reveals it to be a "misdemeanor that is enacted for the protection of human life or safety." K.S.A. 21-3412 defines battery as "(a) [i]ntentionally or recklessly causing bodily harm to another person; or (b) intentionally causing physical contact with another person when done in a rude, insulting or angry manner." The statute protects individuals from bodily harm or physical contact. Thus, it necessarily involves the protection of human life or safety. See also *State v. Cheeks*, 258 Kan. 581, 591-92, 908 P.2d 175 (1995) (no error in failing to instruct on involuntary manslaughter as a lesser included offense where great bodily harm was inflicted on victim; aggravated bat-

tery, a felony, not misdemeanor battery, was applicable underlying crime); *State v. Burrell*, 237 Kan. 303, 699 P.2d 499 (1985) (involuntary manslaughter charge based on running a stop sign); *State v. Makin*, 223 Kan. 743, 746, 576 P.2d 666 (1978) (under certain circumstances, driving at an excessive speed may give rise to involuntary manslaughter); *State v. Thomas*, 6 Kan. App. 2d 925, Syl. ¶ 4, 636 P.2d 807 (1981) (ordinance prohibiting discharge of firearms within the city enacted to protect human life or safety).

The district court did not err in concluding that battery under 21-3412 is a statute enacted for the protection of human life or safety within the scope of 21-3404(b).

Ulland's final argument is that the district court erred in denying his motion for mistrial after the State twice presented evidence regarding a polygraph examination in violation of an order in limine. Ulland contends the State agreed not to refer even to the fact that a polygraph examination was conducted, but twice violated that agreement.

K.S.A. 22-3423(c) provides that a trial court may declare a mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." The decision whether to grant a mistrial is a matter entrusted to the trial court's discretion and will not be set aside on appeal unless abuse of discretion is clearly shown. The defendant has the burden of proving he was substantially prejudiced. *State v. Massey*, 242 Kan. 252, 264, 747 P.2d 802 (1987). If reasonable persons could differ regarding the propriety of the trial court's action, it cannot be said the trial court abused its discretion. *State v. Brown*, 249 Kan. 698, Syl. ¶ 10, 823 P.2d 190 (1991).

Ulland's argument relates to two incidents that occurred during the trial. First, during the State's case in chief, a detective who interviewed Ulland was asked who else was present at the interview. He responded, "Polygraph examin—." The defense objected and the district court sustained the objection, admonishing the jury to disregard the answer because "[p]olygraph has nothing to do with this case." The second incident occurred as the State played for the jury a tape recording of one of Ulland's interviews with the

police. The jury heard the following reference: "See, you remember when we was talking about, when, when, you know, when you were doing that polygraph." The defense objected, and the State acknowledged that it had made an error in failing to delete the statement from the tape recording before playing it for the jury. The district court found the reference on the tape recording to be unintentional.

At the conclusion of the trial, the district court gave the following instruction to the jury:

"During this trial, certain references have been made concerning a polygraph examination. The law in Kansas is that the results of a polygraph examination are not admissible as evidence in a court of law. The reason for that is that the results are not reliable. No scientific basis for such test has ever been shown to a legal certainty.

"You are instructed that you are not to consider these references for any reason whatsoever. Such references are not evidence in this case."

The defense acknowledged that this instruction accurately reflected the law and was appropriate under the facts of this case. The defense, however, maintained that the instruction did not cure the problem created by the references to the polygraph examination.

When reviewing alleged violations of orders in limine, the Supreme Court has adopted a two-part test. First, the court must decide whether there was a violation of the order in limine. Second, if such violation did occur, the court must decide whether the testimony elicited in violation of the order substantially prejudiced the defendant. The burden is on the defendant to show he was substantially prejudiced. *State v. Warden*, 257 Kan. 94, 125-26, 891 P.2d 1074 (1995).

The incidents Ulland complains about violated the parties' agreement not to present evidence concerning the polygraph examination—an agreement which the court adopted as its order. The question then becomes whether Ulland has met his burden of showing substantial prejudice.

Prior cases have distinguished between evidence of polygraph results and the mere reference to the word "polygraph." Absent a stipulation of the parties, the results of a polygraph examination

are too unreliable to be admissible at trial. The fact that a polygraph examination was administered, however, does not render all evidence arising from that examination inadmissible per se. *State v. Hammon*, 245 Kan. 450, 455, 781 P.2d 1063 (1989). Mere mention of the word "polygraph" is not grounds for mistrial. *State v. Green*, 245 Kan. 398, Syl. ¶ 4, 781 P.2d 678 (1989).

In this case, the jury did not receive any evidence concerning the results of a polygraph examination. At most, the jury heard two brief references to the fact that such an examination was administered. Ulland has failed to show how these two references resulted in substantial prejudice to him.

The record shows that the district court took steps to cure any potential prejudice to Ulland. On two different occasions, the district court instructed the jury to disregard any evidence concerning the polygraph examination. The court instructed the jury that polygraph examinations are not evidence because they are unreliable. In the absence of evidence to the contrary, this court must assume the jury followed the instructions given by the trial court to disregard the evidence concerning the polygraph examination. See *State v. Logan*, 236 Kan. 79, 84, 689 P.2d 778 (1984).

Ulland has failed to show substantial prejudice from the State's violation of the order in limine. The district court did not abuse its discretion in denying his motion for mistrial.

Affirmed.