NOT DESIGNATED FOR PUBLICATION

No. 116,576

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM D. JOYCE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Coffey District Court; PHILLIP M. FROMME, judge. Opinion filed February 16, 2018. Affirmed.


*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.


*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.


PER CURIAM: William D. Joyce appeals his jury trial convictions for three counts of rape involving a minor. Joyce claims his confession should have been suppressed as it was involuntarily given; the statute of limitations had run at the time he was charged; and there was insufficient evidence to support his conviction for rape under Count 2. We find Joyce's confession was voluntary; the statute of limitations as amended and extended in 2012 applies; and based on his confession, there was sufficient evidence in a light most favorable to the State to convict Joyce of rape under Count 2. We affirm.

1

In January 2008, Joyce sexually abused his ex-wife's daughter, J.F., who was 11 years old. At the time, J.F. found the abuse painful and hard to deal with but did not report it, thinking it was just a form of punishment. The record is unclear as to when J.F. first revealed the abuse. At a preliminary hearing she testified she first told her mother "about three years later." At the pretrial hearing, she indicated she revealed the abuse to her mother about one year later. At trial, she testified she reported the allegation "about two years later." However, the record does reflect Frederick Elad, an investigator with the Kansas Department for Children and Family Services, received a report on July 9, 2013, of physical and/or sexual abuse involving J.F. Elad then contacted Deputy Joel Lathen of the Haskell County Sheriff's Office to go with him to interview J.F. later that day.

J.F. indicated Joyce raped her and described an incident in which Joyce pushed her onto a bed and raped her after she had gotten out of the shower. At the time of the incident, J.F. lived in Gridley with Joyce, her mother, and her sister. Based on this information, Elad arranged for a forensic interview of J.F. in which she told the forensic interviewer she had been raped by Joyce and described the incident. On July 19, 2013, Coffey County law enforcement received the forensic report. However, officers did not locate Joyce until July 15, 2014. He was arrested in Chanute and taken to the Neosho County Jail. Law enforcement officers from Coffey County arrived a few hours later to conduct Joyce's interview. Detective Aaron Cathcard, Deputy Jeremy Lind, and Undersheriff Tom Johnson participated in the interview. At the outset of the interview, Joyce was given *Miranda* warnings. He verbally acknowledged he understood his rights, reviewed and signed a written *Miranda* waiver, and continued speaking with law enforcement.

Joyce initially denied any wrongdoing. Detective Cathcard asked Joyce if he would be willing to take a computer voice stress analysis (CVSA) test. After Detective

Cathcard explained the nature of the test, Joyce agreed to take it. Detective Cathcard left the interview room to retrieve Undersheriff Johnson to conduct the CVSA. Detective Cathcard and Deputy Lind left the room while the CVSA was being conducted. Undersheriff Johnson advised Joyce of his rights and provided him with a release form for the CVSA, which he signed. Joyce was also re-advised of his *Miranda* rights. He verbally acknowledged his understanding of his rights and signed a second written *Miranda* waiver prior to the CVSA.

Undersheriff Johnson asked Joyce some background questions as well as questions related to J.F. He denied any wrongdoing. Undersheriff Johnson then told Joyce he was ready to begin the test and asked him nine questions.

Joyce denied any wrongdoing while answering those questions. Undersheriff Johnson advised Joyce the testing protocol required him to disregard the first test's results and repeat the test. Joyce told Undersheriff Johnson he was ready to take the test again. Undersheriff Johnson asked Joyce the same nine questions and Joyce again denied any wrongdoing. Undersheriff Johnson then left the test room and returned approximately 15 minutes later with Detective Cathcard to discuss the test results. He told Joyce he was showing signs of stress and wanted to talk to him about that. Initially, Joyce denied any wrongdoing but eventually began to admit he touched J.F. inappropriately. He eventually admitted to having intercourse with J.F. three times over the course of a week in January 2008.

The State charged Joyce with three counts of rape. Prior to trial, Joyce filed a motion to suppress his confession, arguing it was not voluntarily made. The district court held a hearing on Joyce's motion to suppress at which the *Miranda* waivers and unredacted footage of the interview were admitted. Joyce did not testify. The district court found Joyce's statements were voluntary and denied his motion. Joyce's confession was admitted over his objection during the jury trial. Joyce was convicted of three counts

of rape as charged and he was sentenced to three consecutive sentences of imprisonment for life without the possibility of parole for 25 years.

ANALYSIS

*No Error to Deny Joyce's Suppression Motion*

Joyce argues the district court erred in denying his motion to suppress the statements made to law enforcement after his arrest. In reviewing a trial court's decision regarding the suppression of a confession, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard. The appellate court does not reweigh the evidence when applying this standard. *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014).

Joyce was undisputedly in custody at the time of the interrogation. He acknowledges he was read *Miranda* warnings at the outset of the interrogation and again before he took the CVSA. Notwithstanding his two verbal and written *Miranda* waivers, Joyce argues his self-incriminating statements were not voluntarily made.

It appears Joyce is complaining about the fairness of using a CVSA during his interview and what he alleges as misstatements of fact and law by Undersheriff Johnson in trying to get him to confess. The CVSA is a computer-aided test used to measure stress based on changes in vocal patterns.

> "Similar to polygraph testing, a voice stress analysis is based upon the theory that an individual undergoes certain physiological changes when being deceitful. Thomas R. Malia, *Admissibility of voice stress evaluation test results or of statements made during test,* 47 A.L.R.4th 1202 (1986). As a result, when being subjected to voice stress analysis,

4

these changes can presumably be monitored and interpreted. . . . Voice stress analysis and polygraph testing have been used by law enforcement for many years." *State v. Davis*, 310 Wis. 2d 583, 596-97, 751 N.W.2d 332 (2008).

Although not discussed in Kansas criminal cases, our Supreme Court referred to a psychological stress evaluation (PSE)—i.e. voice stress test—as "basically a voice lie-detector test" in *Neises v. Solomon State Bank*, 236 Kan. 767, 770, 696 P.2d 372 (1985).

The CVSA is highly analogous to polygraph testing insofar as it measures physiological changes to detect whether someone is being truthful. There is considerable Kansas caselaw regarding the use of polygraphs in police interrogations. While it is clear the results of a polygraph cannot be admitted in court without the stipulation of the parties, the use of a polygraph in police interrogations does not necessarily render a confession inadmissible. See *State v. Hammon*, 245 Kan. 450, 455, 781 P.2d 1063 (1989); *State v. Ulland*, 24 Kan. App. 2d 249, 258-59, 943 P.2d 947 (1997). Even statements made during a polygraph examination can be admissible if they were voluntarily made. See *State v. Blosser*, 221 Kan. 59, 62-63, 558 P.2d 105 (1976); *State v. Byrd*, No. 93,348, 2006 WL 90097, at *4 (Kan. App. 2006) (unpublished opinion).

As to the misstatements of fact by Undersheriff Johnson, Joyce refers us to the following comments:

> "[Johnson:] Mr. Joyce I don't know much about this. I'm a certified CVA examiner—that's computer voice stress analyzer. Guys asked me to come along—helping to get this case cleared. So I'm going to ask you to do a couple things for me, sign a couple of documents, and then I'm going to ask you some questions. I don't know a lot about what's going on. Okay?"

Here, Joyce argues Undersheriff Johnson misstated and misled him by stating he was there "helping to get this case cleared," giving Joyce the impression Undersheriff

Johnson was there to help him. Joyce continues to argue the statements made below by Undersheriff Johnson reflected "contradictory information to [Joyce] about what he could say to his interrogators and what their roles were in this process."

"[Johnson:] You don't know me and I don't know you, okay. So you're going to have to trust somebody here. And so I need to tell you some stuff. We don't offer you more than what we tell you when we walk in here. We're not gonna lay all the cards on the table. . . . So let's be done with things. Let's start over. And let's talk about what happened so we can walk in tomorrow morning and say William Joyce sat down with us, told us what happened and here's the truth. You want to do that with us, so we can get to the bottom of this?

"[Joyce:] Yeah. I mean, I'm—

"[Johnson:] —Then tell us what happened with [J.F.].

"[Joyce:] I treated her like my own daughter.

"[Johnson:] No, no, let's not go there.

"[Joyce:] Okay.

"[Johnson:] There's two issues. We talked about that William. The issue is—there was sexual intercourse, okay. We know that. This instrument tells me that. . . . This ain't our first rodeo, okay. You can do whatever you want to do with this [referring to investigation], but you can't do it to this [referring to CVSA equipment]. You can tell us whatever you want to tell us. So, again, let's not go around that side of the barn again. Let's talk about what happened to [J.F.]. . . . Let's get it out in the open. Let's talk about it. 'Cause I'm not kidding you William, we want to tell our prosecutor in the morning that you've been truthful."

We do not find Undersheriff Johnson's remarks to be a misstatement of the facts involving this case or the law. As to what the CVSA actually told Undersheriff Johnson, we do not know as it is not part of the record on appeal. Legal misrepresentations, as Joyce notes, are "more problematic" than "telling a suspect false information about the evidence." See *State v. Morton*, 286 Kan. 632, 652, 186 P.3d 785 (2008).

The State responds Undersheriff Johnson did not misrepresent "the true nature of the interview." See 286 Kan. at 653. The State points out Undersheriff Johnson never misrepresented to Joyce he was not in custody or what the purpose of the interview was. The State continues its response by showing the officers had Joyce waive his *Miranda* rights twice and also acknowledge in writing he was voluntarily taking the CVSA test. The officers took time to explain to Joyce his rights and he chose on his own to take the CVSA test and to continue voluntarily talking to the officers. From our observation of what took place during Joyce's confession, we see no action by Undersheriff Johnson that confused or misled Joyce about what was going on or how he should choose to react to the questions presented by Undersheriff Johnson.

We also find this factual scenario similar to the issues raised in *State v. Waugh*, 238 Kan. 537, 712 P.2d 1243 (1986). Waugh agreed to take a lie detector test in an attempt to show he was telling the truth. Ultimately, according to the examiner, the test reflected that Waugh had lied. Shortly thereafter, Waugh confessed to killing the victim. Thus, Waugh's "calculated risk had failed." *Waugh*, 238 Kan. at 544. The same is true here for Joyce's voluntary decision to take the CVSA test.

Here, Joyce's statements were not made during the CVSA. He denied any wrongdoing in both the first and second CVSA tests. Joyce did not admit to wrongdoing until well after the second CVSA test had been concluded. Even if Joyce had admitted to wrongdoing during the CVSA, his admission would not necessarily be inadmissible. See *Blosser*, 221 Kan. at 62-63.

Joyce correctly cites to the six-factor test articulated by our Supreme Court in *State v. Walker*, 283 Kan. 587, 153 P.3d 1257 (2007), for determining the voluntariness of his statements. The *Walker* factors are:

7

"(1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." 283 Kan. at 596-97.

Joyce concedes the first, fourth, and sixth *Walker* factors are not at issue here. He alludes to the second and third factors but provides little elaboration and no supporting authority. At best, he incidentally raises the second and third factors but fails to argue them. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Sprague,* 303 Kan. 418, 425, 362 P.3d 828 (2015). Nonetheless, we observe the manner and duration of the interrogation was not overly aggressive or excessively long. Joyce was at the Neosho County Sheriff's Office for about 5-1/2 hours. The actual interview by Coffey County Sheriff officers took 2 to 2-1/2 hours with at least a 15-minute break. We do not see that length of time as being excessive. See *Walker*, 283 Kan. at 596-97 (upholding statements as voluntary where defendant was held for almost 13 hours and confessed to committing crime after about 8 hours).

In addition, Joyce had the ability to communicate with the outside world. The record reflects Joyce was told he could make a phone call but he never requested one. There was also at least a 15-minute break after the CVSA testing was completed before he made his incriminating statements to Undersheriff Johnson. Joyce fails to relate how this affected the voluntariness of his confession.

Joyce asserts "the most significant factor . . . is the fairness of the officers conducting the interrogation." In other words, his argument is almost entirely premised on the fifth *Walker* factor. In analyzing this factor, he asks this court to look for guidance in the Wisconsin Supreme Court's decision, *Davis*, 310 Wis. 2d 583. The *Davis* court evaluated the voluntariness of a confession following a CVSA. In doing so, it created a five-factor test:

"(1) Whether the defendant was told the test was over; (2) whether any time passed between the analysis and the defendant's statement; (3) whether the officer conducting the analysis differed from the officer who took the statement; (4) whether the location where the analysis was conducted differed from where the statement was given; and (5) whether the voice stress analysis was referred to when obtaining a statement from the defendant." 310 Wis. 2d at 339-40.

As the State points out, Joyce is asking this court to graft the *Davis* test onto the *Walker* test; however, Joyce did not specifically argue the *Davis* factors before the district court. He did argue before the district court the inherently coercive nature of the CVSA.

Regardless, Joyce fails to relate his argument to the controlling standard of the *Walker* test. He does not explain why a finding in his favor utilizing the *Davis* test— which only goes to the fifth *Walker* factor—would render his confession involuntary within the overall framework of the *Walker* analysis. Moreover, he provides no supporting authority suggesting the fifth *Walker* factor alone can render a confession involuntary. Again, a point raised incidentally in a brief and not argued therein is deemed abandoned. *Sprague*, 303 Kan. at 425. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015). Nonetheless, our review of the record indicates the administration of the CVSA—which Joyce voluntarily agreed to take as part of the interview process—did not make his confession involuntary. The district court correctly found Joyce's confession admissible.

*The statute of limitations did not run.*

Joyce argues the charges should have been dismissed based on the statute of limitations in effect at the time the crimes were committed. At the time of the offenses, the applicable statute of limitations for rape required the charges to be filed within five

9

years of the date the offense was committed. See K.S.A. 21-3106(4). The record reflects Joyce committed the offenses prior to January 31, 2008. However, no charges were filed until July 22, 2014. He acknowledges that in 2012 the statute of limitations was amended and extended with recodification of the criminal code in K.S.A. 2012 Supp. 21-5107.

Under K.S.A. 2012 Supp. 21-5107(f), if "the victim was under 18 years of age at the time of the offense, then the time shall start to run on the day after the victim's 18th birthday." Joyce concedes, "the 2012 amendment could be applied to the instant case because the amendment occurred within the time in which this crime could have been prosecuted under the statute of limitations that existed at the time of the alleged offenses." Where the statute of limitations is extended by a legislative amendment, the extension applies to offenses not barred as of the effective date of the amendment. See *State v. Noah*, 246 Kan. 291, Syl. ¶ 5, 788 P.2d 257 (1990); *State v. Nunn*, 244 Kan. 207, Syl. ¶ 11, 768 P.2d 268 (1989).

Joyce cites to *Noah* and *Nunn* in his brief but argues "such an application of the law to him would be unduly harsh." He asserts he did not do anything to conceal the crimes or avoid apprehension or prosecution, thus, he should not be subject to the amended statute of limitations. He provides no citation to authority as to why the amended statute of limitations should not be applied to him. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *Murray,* 302 Kan. at 486. The statute of limitations had not run on July 22, 2014, when Joyce was charged since J.F. was not yet 18 years old.

*Sufficient evidence supports Joyce's conviction under Count 2.*

Joyce argues there was insufficient evidence to convict him of one of the counts of rape. "When the sufficiency of the evidence is challenged in a criminal case, this court

10

reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). Joyce contends J.F.'s testimony regarding the first incident of rape, which was charged in Count 2 of the State's complaint, was insufficient to support his conviction. However, he concedes that if his confession was properly admitted, the evidence was sufficient to convict him. Because Joyce has failed to show his confession was erroneously admitted, there was sufficient evidence to convict him of Count 2.

Affirmed.